**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**v.**

**ALLEGHENY AIRLINES and Steward and Stewardess Division of the Air Line Pilots Association, International, Defendants.**

**Civ. A. No. 76–376.**

United States District Court,
W. D. Pennsylvania.

Sept. 8, 1977.

---

Delores Wilson, and Jerome A. Snyder, Equal Employment Opportunity Comn., Philadelphia Regional Litigation Center, Philadelphia, Pa., James S. Bukes, Pittsburgh, Pa., for EEOC.

Stanley W. Greenfield, Pittsburgh, Pa., for the Union.

Bernard D. Marcus, Kaufman & Harris, Pittsburgh, Pa., Harry Rissetto, Morgan Lewis & Bockius, Washington, D. C., Stephen Moldof, Cohen, Weiss & Simon, New York City, for Allegheny.

OPINION

McCUNE, District Judge.

The Equal Employment Opportunity Commission brought this suit against Allegheny Airlines, Inc., pursuant to Title VII of the Civil Rights Act of 1964, alleging that Allegheny has intentionally engaged in discriminatory employment practices based on race and sex. Allegheny has filed a motion to dismiss the Complaint or, in the alternative, for partial summary judgment. This motion presents questions concerning the permissible scope of a judicial complaint filed by the EEOC in a Title VII action.

On January 5, 1972, Roy K. Herman lodged a charge with the EEOC, complaining as follows:

"I applied for employment as a Steward with the Allegheny Airlines on January 4, 1972. I was told by Mr. Rouson that they only hired females for the job and men were not being considered. I feel I have been discriminated against because of my sex (male)."

The record indicates the extent of the EEOC investigation of the Herman charge. On November 16, 1972, the EEOC sent interrogatories regarding the Herman charge to Allegheny. These consisted of four questions which dealt exclusively with Allegheny's hiring procedures for flight attendants and the circumstances surrounding Herman's application for employment as a flight attendant. The position of the flight attendant was also the subject of two file memoranda by EEOC case analyst, David Worstell.[1] In July, 1973, Mr. Worstell made note of an interview he conducted with David Rathke, Allegheny's employment director, during which the two men discussed the new class of flight attendant trainees at Allegheny, and the fact that, since the time of the charging party's application, men and married females had applied for the flight attendant job, but none had been hired. On September 6, 1973, Mr. Worstell attested to a meeting at an Allegheny hanger building with Mr. Rathke, Harry Riset-

to, outside counsel to Allegheny, and Wayne Chapman, Allegheny personnel co-ordinator. The purpose of the meeting "was to discuss Respondent's policy concerning the granting of maternity benefits which is a like and related charge on all the cases against Allegheny involving the flight attendant issue." It is clear from the memorandum that the focus of this meeting was the maternity leave policy expressed in the flight attendant's collective bargaining agreement.

In addition to the foregoing, the Commission requested, and Allegheny furnished, the following documents: copies of the flight attendant's collective bargaining agreement; Allegheny's employment application form; a statement of flight attendant qualifications; and EEO-1 forms which specify the race and sex representation in the various job-classifications at Allegheny's Pittsburgh, Pennsylvania facility.[2]

On October 24, 1973, Eugene V. Nelson, District Director of the EEOC in Pittsburgh, issued a Letter of Determination on the Herman charge. The determination incorporated the charges of two other men besides Herman who had either filed applications for employment or inquired about employment in the flight attendant position. There is no evidence that the scope of the investigation of these charges exceeded that of the Herman charge. The four page Letter of Determination dealt entirely with the flight attendant's position, except for two paragraphs. Those paragraphs extended the determination to include "Respondents' failure to hire and promote women and Negroes into the job categories of officials and managers, professionals and technicians," and "Respondents inquiries on its employment application concerning prospective employees' arrest records."

Following the issuance of the determination, the Commission and Allegheny attempted conciliation. The EEOC representative in this process, Victoria A. Ross, submitted an affidavit which stated, in part, that

1. Plaintiff's Memorandum, Exhibits D and E.

2. Plaintiff's Memorandum, Exhibits F, G, H, and I.

"3. During the first conciliation discussion . . . each of the issues in the District Director's Determination . . . was introduced for possible conciliation discussions and then conciliation discussions focused on those issues directly affecting the hiring of Roy K. Herman as a flight attendant with retroactive seniority and back pay.

"4. When the Commission and Allegheny Airlines could not arrive at a satisfactory resolution of the issues with respect to Mr. Herman, the *Commission* concluded that conciliation had failed.

"5. Had the Commission and Allegheny been able to conciliate the issues with respect to Mr. Herman, the Commission *would have attempted* conciliation of all other issues.

\* \* \* \* \* \*

"7. My instructions, at that time, were to conclude conciliation efforts if there was no agreement as to charging party, since that aspect of conciliation was deemed to be essential and that to go on to other issues . . . would be an inefficient use of Commission resources and personnel." (Emphasis supplied).

The Complaint, instituted pursuant to § 706(f)(1) of Title VII, 42 U.S.C. § 2000e–5(f)(1), was filed on March 23, 1976. In the Complaint, paragraph 10, the Commission alleges that Allegheny engaged in the following unlawful employment practices: (A) excluding blacks from certain jobs because of their race, (B) using pre-employment criteria (arrest record inquiries) which caused a disproportionate rejection of blacks, (C) excluding males as flight attendants, (D) excluding married females as flight attendants, (E) maintaining discriminatory maternity leave policies, and (F) excluding females from certain job classifications because of their sex. Paragraph 11 of the Complaint charged that Allegheny uses advertisements which indicate a preference for employment based on sex.

Subsequently, the EEOC gave notice that it would take the depositions of many Allegheny officials, including the President and six Vice-Presidents of the company, and that they should bring all documents dating from July 1, 1965, to the present time pertaining to a wide range of subjects, including Allegheny's hiring and promotion policies for (a) directors, officers and other managers, (b) pilots, lawyers, engineers and other professionals, and (c) technicians.

■ Allegheny has filed a Motion to Dismiss the Complaint because it failed to incorporate the administrative charge. This question requires no extended discussion. It is true that the charge is not mentioned in the Complaint. However, the EEOC contends that under Rule 8(a)(1) of the Federal Rules of Civil Procedure, the Complaint is sufficient as notice pleading since it did refer to the substance of the charge and to the Act under which it was brought. We agree, and conclude that the Complaint is sufficient to withstand the Motion to Dismiss under the holding of *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

The important question is whether the scope of this Complaint is too broad, as Allegheny asserts in its Motion for Partial Summary Judgment. Allegheny contends that the scope of the Complaint is jurisdictionally limited to the scope of the charge which Herman filed with the EEOC, and would have the court reduce the subject matter of this suit to the male flight attendant issue. The allegations regarding race discrimination and sex discrimination against women, including the maternity leave issue, would thus be eliminated from the litigation. We believe this view to be too narrow. In our opinion, the EEOC must be jurisdictionally limited to asserting only those claims relating to the position of flight attendant, not because of the narrow scope of the charge, but because the scope of the EEOC conciliation efforts were limited to those issues. The litigation may embrace all forms of discrimination found within the flight attendant job classification, whether based on sex or race, including the maternity leave policy for female flight attendants. It will not, however, touch upon any alleged discrimination in the management, professional or technician job classifications.

■ By virtue of the 1972 Amendments to Title VII, the EEOC is authorized to bring a civil action against any respondent named in the charge. 42 U.S.C. § 2000e–5(f)(1). However, before suit may be instituted, the following administrative procedures must be completed: (1) notice of the charge must be served on the charged party; (2) the charge must undergo an investigation; (3) there must be a determination after such investigation that there is reasonable cause to believe that the charge is true, and (4) if reasonable cause is found, there must be an attempt to eliminate allegedly unlawful practices by conciliation. 42 U.S.C. § 2000e–5(b). Each step in this statutory scheme is intended to be a condition precedent to the following step and, ultimately, to suit. See *E.E.O.C. v. E. I. Dupont de Nemours and Co., etc.,* 373 F.Supp. 1321 (D.Del.1974), aff'd on other grounds, 516 F.2d 1297 (3d Cir. 1975).

■ The relationship between the breadth of a Title VII judicial complaint and the required administrative processing of a charge has been the subject of a developing body of law. In *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), the Fifth Circuit stated the now widely accepted rule that the scope of an individual's Title VII judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the initial charge of discrimination. Thus, any kind of discrimination which is like or related to allegations contained in the charge and which is developed in a reasonable investigation of that charge may be included in the judicial complaint. *King v. Georgia Power Co.,* 295 F.Supp. 943 (N.D. Ga.1968). It follows, a fortiori, that this rule applies to a complaint filed by the EEOC. *E.E.O.C. v. Dupont, supra.*

Significantly, the *Sanchez* court, in considering an individual Title VII Complaint, did not depart from the traditional concept of standing. In that case, the individual complainant, a Mexican American woman, had standing to allege discrimination based upon sex, which was alleged in her initial charge, or national origin, which was alleged in her amended charge, since she was the potential victim of both. The expansion of a particular charge was still limited to those issues that a particular complainant had standing to raise. The *Sanchez* decision does not compel the conclusion, for example, that a charge of sex discrimination filed by a white male can be reasonably expected to grow into an investigation, and thus a judicial complaint, encompassing sex discrimination against women and race discrimination against blacks. In *Dupont, supra,* and in *E.E.O.C. v. Magnetics Division of Spang Industries et al.,* C.A. 75–130 (W.D.Pa., filed May 25, 1976), two district courts of this Circuit applied *Sanchez* in actions filed by the EEOC, but neither court was faced with a complaint, the allegations of which exceeded the potential standing of the original charging party.

It was not until the Fourth Circuit's decision in *EEOC v. General Electric Co.,* 532 F.2d 359 (4th Cir. 1976), that the concept of standing was abandoned in a civil action brought by the EEOC. There, two black men filed charges of race discrimination in employment. Following investigation and attempted conciliation, the Commission filed a complaint alleging race discrimination and sex discrimination against women. The district court granted defendants' motion for summary judgment on the sex discrimination count. The Fourth Circuit reversed. Reasoning that the 1972 Amendments to Title VII granted to the EEOC broad public enforcement powers which were intended to eliminate societal, rather than merely individual, wrongs, the appellate court held that "the standing of the EEOC to sue under Title VII cannot be controlled or determined by the standing of the charging party." 532 F.2d at 373. Thus, if a valid charge is filed and proper notices given, the EEOC may bring a civil suit encompassing any discrimination which is uncovered in a reasonable investigation, under *Sanchez,* and fully conciliated, as the Act requires.[3]

The Third Circuit has yet to enunciate its position on the permissible scope of an

---

**3.** For cases opposing this view, see *EEOC v. Hickey-Mitchell Co.,* 372 F.Supp. 1117 (E.D.Mo. 1973); *EEOC v. New York Times Broadcasting Service, Inc.,* 364 F.Supp. 651 (W.D.Tenn.1973);

EEOC Title VII complaint. However, the holding in *General Electric* has been followed by Judge Rosenberg of this court in *E.E.O.C. v. Greyhound Lines, Inc.,* 411 F.Supp. 97 (W.D.Pa.1976).[4]

■ One aspect of Allegheny's motion is a request for summary judgment as to the allegations regarding race discrimination and sex discrimination against women, and especially the maternity leave issue, on the grounds that those allegations exceed the scope of the charge and the investigation conducted by the EEOC. We must initially decide whether the EEOC may assert claims which are beyond the potential standing of the charging party, and if so, whether the basis for those claims were uncovered in an investigation which one reasonably could have expected to grow out of the charge. In our opinion, the EEOC should not be limited, in its right to bring suit, to the type of discrimination specifically alleged by the charging party or to a type of discrimination which the charging party had standing to assert. Such a limitation would be unwarranted in view of the 1972 Amendments, which gave the EEOC the right to enforce Title VII in its own name. The EEOC was not intended to be merely a stand-in for the charging party. The purpose of the Amendment was to give the EEOC the right to seek redress for any employment discrimination legitimately revealed in a reasonable investigation and subjected to genuine conciliation.

■ We cannot say that the conduct of the Commission's investigation of the Herman charge was unreasonable. In the course of its investigation, the Commission served Allegheny with interrogatories which, as we have said, were exclusively concerned with the flight attendant position. Complying with one request, Allegheny supplied a complete list of its flight attendants indicating, inter alia, the race of each employee. Allegheny also furnished the EEOC, upon request, copies of the flight attendant's labor agreement and a

statement of qualifications for flight attendants. These documents were related to Herman's application for employment. The agreement contains the maternity leave policy. The qualifications statement refers to the requirement that flight attendants be single. Once the Commission discovered potential areas of discrimination, it was justified in pursuing them in meetings with Allegheny officials. The Commission further requested and received EEO-1 forms, which stated the number of blacks and women employed in the management, professional and technician job classification.

The conclusion that the investigation was reasonably related to the charge does not put an end to our inquiry.

■ Following investigation, the Commission must reach a determination of reasonable cause and make a genuine attempt to obtain voluntary compliance with the law. With respect to the position of flight attendant, the Commission's letter of determination sets forth in detail the factual and legal basis for the conclusion that Allegheny violated the law by refusing to hire men and married women and by maintaining a discriminatory maternity leave policy. There are a number of documents in the record which indicate the extent of the investigation of the flight attendant position. With respect to alleged discrimination in management, professional and technician positions, however, the letter of determination consists of a one-paragraph conclusion based "on the available statistical evidence and demographic data." Aside from the EEO-1 forms referred to previously, there is no indication in the record of an investigation of discrimination in these job classifications. We recognize that it is not our function to review the Commission's determination to see if it is supported by substantial evidence. See, *Dupont, supra,* at 1338–1339. However, in the statutory scheme of Title VII, the quality of the investigation has a bearing, not only on the scope of the determination, but also on the sufficiency of the Commission's attempt to

*Fix v. Swinerton & Walberg Co.,* 320 F.Supp. 58 (D.Colo.1970).

4. Also, see dictum by Judge Miller of this court in *E.E.O.C. v. Beaver Gasoline Co.,* C.A. No. 76–735 (W.D.Pa., filed April 22, 1977).

conciliate specific issues. The investigation and determination are supposed to provide a framework for conciliation. Conciliation is the culmination of the mandatory administrative procedures, whose purpose is to achieve voluntary compliance with the law. Each step in the process-investigation, determination, conciliation, and if necessary, suit—is intimately related to the others. In our view, the EEOC investigation of the aforementioned issues did not establish a framework for conciliation. The result, as the record indicates, was that the Commission did not pursue these issues during conciliation with the objective of obtaining voluntary compliance.

Once the Commission concluded that conciliation on "the issues with respect to Mr. Herman" had failed, it did not even attempt conciliation on "all other issues." In her affidavit, the EEOC conciliator says that each issue contained in the determination was "introduced for possible conciliation" at the first meeting. Genuine conciliation was attempted, however, only on the flight attendant issue, "since that aspect of conciliation was deemed essential and that to go on to other issues . . . would be an inefficient use of Commission resources and personnel." This statement confirms what is abundantly clear from the entire record. This lawsuit is the culmination of investigations on a number of charges, all relating to the flight attendant issue. The Commission has concentrated considerable effort on this phase of Allegheny's operation. It entered into conciliation with the intention of seeking Allegheny's voluntary compliance with the law in the flight attendant position, and with no other purpose. Under these circumstances, the lawsuit should be limited to resolving the flight attendant controversy.

The case law supports our conclusion. In the *General Electric* case, the court repeatedly emphasized the importance of a full conciliation effort. For example, it stated that:

" . . . any claim included properly in the reasonable cause determination and offer to conciliate may be the basis of a civil suit, *if conciliation on that claim fails.*" (Emphasis supplied). 532 F.2d at 370.

Here, conciliation on the alleged discrimination in the management, professional and technician positions did not fail, for it was never attempted. In *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir. 1976), the court faced a situation similar to the one we face. There, the EEOC conciliator was instructed to conclude conciliation before all claims were discussed. Dismissing the claims not fully conciliated, the court said:

" . . . When it became apparent that the Commission's representative lacked authority to settle the case, the possibility of conciliation was dealt a severe blow by the very circumstances Congress sought to avoid—commencement of a civil action before attempting conciliation." 535 F.2d at 272.

Although the 1972 Amendments gave the EEOC the power of an enforcer, they did not change its responsibility as a conciliator.[5] Conciliation became a condition precedent to the Commission's power to sue. We quote from a reference to the legislative history of the Act appearing in *EEOC v. Westvaco Corp.*, 372 F.Supp. 985, 988 (D.Md.):

" . . . Senator Dominick, the principal architect of the 1972 Amendment that empowered the Commission to bring suit in its own name, stated that '[m]y amendment would take over at the level where conciliations fail.' 118 Cong.Rec.S. 170 (Jan. 20, 1972). 'What the amendment does . . . is . . . provide for trial in the U. S. District Courts whenever the EEOC has investigated a charge, found reasonable cause to believe that an unlawful employment practice has occurred, and is *unable* to obtain voluntary compliance.' 118 Cong.Rec.S. 221 (Jan. 21, 1972). Similarly, the senior House conferee on the 1972 Amendment ventured the opinion that "*[o]nly if conciliation proves to be impossible* do we expect the Commission to bring action in federal district court to seek enforcement.'

---

**5.** Whether an enforcer can truly conciliate is a question for the Congress.

Cong.Rec.H. 1861 (Mar. 8, 1972). (Remarks of Congressman Perkins, introducing the Conference Report on House Resolution 1746)." (Emphasis supplied).

In *Dupont, supra,* it was said that:

" . . . each step in the Commission's administrative process is designed to be a prerequisite to the following step and, ultimately, to suit. Congress, committed as it was to voluntary compliance, could not have intended that the Commission could attempt conciliation on one set of issues and, having failed, litigate a different set. . . ." 373 F.Supp. at 1336.

In *E.E.O.C. v. Greyhound Lines, Inc., supra,* and in *EEOC v. Magnetics Division of Spang Industries et al., supra,* two decisions from this district, motions to dismiss and for summary judgment, respectively, on the grounds of incomplete conciliation were denied. These cases are distinguishable. In the *Greyhound* case, it was not controverted that conciliation was attempted by the EEOC on all issues. In the *Spang* case, there was a factual dispute as to whether sufficient conciliation efforts were made, and thus summary judgment was inappropriate. Here, the EEOC conciliator has admitted that she lacked authority to continue with conciliation once the discussions on the flight attendant issues proved unsuccessful.

The Commission argues that by eliminating the aforementioned claims of discrimination from this litigation, and by requiring the administrative process to begin anew, this court is causing a waste of the Commission's resources and a delay in the eradication of employment discrimination. These factors, of course, are among the primary reasons for extending the Commission's power of suit to claims which exceed the scope of the charge. However, the argument cuts both ways, and there are equally valid reasons for having the EEOC fully investigate and conciliate before bringing suit on a claim. In this case, for example, the issues surrounding any alleged discrimination in the management, professional and technician fields have not been framed for trial. The Commission wants to pursue through discovery those issues which it chose not to pursue in conciliation. This approach leads to the abuse of discovery.[6] Congress maintained the provisions for conciliation and voluntary compliance when it passed the 1972 Amendments in order to prevent interminable litigation which would be a burden on both the EEOC and the district courts, not to mention the entities which are sued. See *EEOC v. Hickey-Mitchell Co.,* 507 F.2d 944, 948 (8th Cir. 1974). Our decision stands on the ground that the Commission has not fulfilled the requirements of Title VII. A concomitant result is that the litigation will be relatively simple and the issues to be tried will be capable of more practical adjudication. We note that the union representing Allegheny's flight attendants has been made a party defendant to this action so that complete relief may be afforded in the event the Commission prevails on the merits.

The Motion to Dismiss will be denied. The Motion for Partial Summary Judgment will be granted to the extent that the issues have been narrowed.

---

**6.** The abuse of the discovery process here is remarkable.