**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**SHERWOOD MEDICAL INDUSTRIES, INC., Defendant.**

**No. 76–106–Orl–Civ–Y.**

United States District Court, M. D. Florida, Orlando Division.

April 21, 1978.

Conference and a member of the Advisory Committee on Bankruptcy Rules, Judicial Conference of the United States.

Charles Mishkind, Trial Atty., EEOC, Atlanta, Ga., for plaintiff.

Thomas C. Garwood, Jr., Akerman, Senterfitt & Edison, Orlando, Fla., for defendant.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This is a Title VII enforcement action brought by the Equal Employment Opportunity Commission against Sherwood Medical Industries, Inc. (Sherwood), alleging that Sherwood engaged in discriminatory employment practices with respect to race and male gender. Now before the Court is Sherwood's "Motion to Strike and/or for Dismissal for Failure to State a Claim and/or for Summary Judgment," which puts in issue the permissible scope of the Commission's judicial complaint in this cause. The decisive question raised is whether the EEOC is now foreclosed from prosecuting its claim of male sex discrimination because it neither included this claim in its reasonable cause determination nor afforded Sherwood an opportunity to conciliate the matter prior to filing suit.

## I. BACKGROUND

This Title VII case was set in motion on July 16, 1973 when Larry C. Dilligard, a black male, filed a charge with the EEOC, complaining that he had been denied employment by defendant Sherwood solely because of his race. The details of his charge of discrimination, assumed to be true for the purpose of this motion, are as follows: Dilligard entered the personnel office of Sherwood's Deland facility on the morning of July 9, 1973 and requested an application for employment. He informed a caucasian female employee that he was seeking a clerical position and that he had a college degree in business. Dilligard was told that there were no vacancies in the clerical area and that there was no need to fill out an application because "we only accumulate a lot of applications and eventually throw them in the garbage can". Dilligard responded that he wished to complete an application in any event so that he could have one on file if a vacancy did occur. The employee refused to give him an application. Dilligard observed at the time a number of white job applicants waiting in a nearby reception center for interviews.

The EEOC responded to Dilligard's charge by sending Sherwood the statutory notice of charge and initiating a broad scale investigation into Sherwood's employment practices. In the course of its investigation the Commission compiled statistical data on the race and sex composition of Sherwood's clerical work force.

On February 18, 1975 the Commission issued a formal "reasonable cause determination" finding "reasonable cause to believe that respondent [Sherwood] failed to hire charging party because of his race." Despite the fact that the investigation clearly encompassed male gender discrimination, the determination made no finding on that issue and it invited concilation only on Dilligard's narrow charge of race discrimination. Indeed, there were merely two references to male gender employment practices in the entire three page document:

> "The Commission also notes that all of respondent's clericals are female except one.
>
> The foregoing statistics coupled with the fact that there were clerical vacancies after July 9, 1973, is sufficient to establish that exclusion of blacks, and particularly black males, has occurred."

Apparently at no point during the conciliation negotiations that followed the Commission's determination did male gender employment discrimination emerge as a subject of concern. The conciliation agreement ultimately proposed by the Commission (and rejected by Sherwood) was completely silent on that issue; the agreement focused exclusively on Dilligard's charge of race discrimination. And from all that appears in the record it was not until the judicial complaint in this cause was filed that Sherwood first learned of the Commission's claim that it had discriminated against males.

Sherwood now argues that the Commission's failure to put it on notice of the sex discrimination claim and to afford it an opportunity to conciliate the matter bars the Commission from pressing that claim in this action. In substance, Sherwood's contention is that the Commission has failed to satisfy all of the statutory pre-requisites to its power to sue under Title VII, hence this Court lacks subject matter jurisdiction over the sex discrimination claim. The Commission's response is that it has satisfied the minimum conditions on its power to bring a Title VII enforcement action. It takes issue with the contention that the reasonable cause determination did not sufficiently apprise Sherwood of its claim of male gender discrimination. And it maintains that it can assert its sex discrimination claim even if that issue were never made an explicit subject of conciliation. Moreover, the Commission argues, the scope of matters sought to be conciliated is not a proper subject of judicial scrutiny and hence the Court should not even inquire into whether the sex claim was a subject of attempted conciliation.

## II. THE SCOPE OF THE CHARGE AND THE INVESTIGATION

■ It is now well settled that the allowable scope of a civil enforcement action by the Commission is not fixed strictly by the allegations of the charging party's charge of discrimination. Rather, as the Fifth Circuit held in the often-cited decision of *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (1970), the scope of the civil action is to be determined by the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." 431 F.2d at 466.[1] The charge should be viewed merely as the starting point for a reasonable investiga-

---

1. The post-*Sanchez* decisions have applied slightly different tests to determine whether the Commission's judicial complaint was unreasonably broad in light of the charge of discrimination. *Compare* e. g., *Gamble v. Birmingham Southern R.R. Company,* 514 F.2d 678, 687–89 (5th Cir. 1975); *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir. 1973); *with MacBride v. Delta Airlines, Inc.,*

551 F.2d 113, 115 (6th Cir. 1977); *EEOC v. General Electric Co.,* 532 F.2d 359, 365–66 (4th Cir. 1976). It is doubtful that there is any meaningful distinction between the tests employed. The inquiry in every case is essentially whether the additional charge of employment discrimination could reasonably have grown out of an investigation into the original charge.

tion, not as a common-law pleading which narrowly circumscribes the Commission's freedom of action in carrying out its statutory duties. If the Commission uncovers during a reasonable investigation facts which support a charge of some form of discrimination other than that alleged in the original charge, it is free to develop these facts and, if necessary, to require the respondent to account for them. Judge Russell of the Fourth Circuit has astutely summarized this principle this way:

"*So long as the new discrimination arises out of the reasonable investigation of the charge filed,* it can be the subject of a 'reasonable cause determination,' to be followed by an offer by the Commission of conciliation, and, if conciliation fails, by a civil suit, without the filing of a new charge on such claim of discrimination. In other words, the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for *any discrimination stated in the charge itself or developed in the course of the reasonable investigation of that charge,* provided such discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act." (emphasis in original) *EEOC v. General Elec. Co.,* 532 F.2d 359, 366 (4th Cir. 1976)

In the present case the Commission's investigation clearly exceeded the scope of the charging party's charge of discrimination. For Dilligard's charge dealt solely with race and the Commission, in the course of its investigation of that charge, compiled statistical data on sex as well. But Sherwood does not say that the broader focus of the investigation was in any way improper or abusive in relation to the charge filed; indeed it appears to concede the reasonableness of the investigation. So there is no real question here about the scope of the judicial complaint per se. If the Commission complied with the statutory pre-requisites to bringing suit, it was free to assert its sex claim against Sherwood because that claim arose out of a reasonable investigation of the original charge of discrimina-

tion. The scope of the complaint is in issue here only because it is contended that with respect to the sex discrimination claim the Commission has failed to comply with two statutory conditions on its power to sue: a reasonable cause determination and an effort to conciliate.

## III. THE REASONABLE CAUSE DETERMINATION

Under 42 U.S.C. § 2000e–5(b), after the Commission investigates a charge of discrimination, it should "so far as practical not later than 120 days from the filing of the charge" make a determination on whether it believes the charge is true. This reasonable cause determination is a very crucial step in the administrative process. For it marks the conclusion of the Commission's investigation into a respondent's employment practices and it represents the Commission's formal opinion about what its investigation revealed. The determination may even bring the administrative process to an end with respect to many charges; if a "no cause" determination is made the charge of discrimination will be dismissed and the complaining party left to his private remedies in court. And where a "cause" determination is reached, the Commission, by law, must undertake an attempt to conciliate the dispute. *See generally Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355 at 359, 97 S.Ct. 2447, 2451, 53 L.Ed.2d 402 at 407 (1977). In that event, the reasonable cause determination is intended to serve both as a formal means of placing the respondent on notice of the particular employment practice which the Commission views as violative of Title VII and as a framework for the conciliation efforts to follow.

Because of the importance of the reasonable cause determination, as a means of finally drawing the investigation to a close, as an embodiment of the Commission's legal conclusions from the evidence, as a means of notice to the respondent and as a device to frame the issues for conciliation, it seems evident that any and all of a respondents' employment practices viewed by the Com-

mission as probably discriminatory, must be explicitly included in the determination. That is, the Commission must make an express finding in the determination concerning each employment practice which it concludes to be violative of Title VII. The Courts which have addressed themselves to this question have so concluded. *EEOC v. Allegheny Airlines,* 436 F.Supp. 1300, 1306–07 (W.D.Pa.1977); *EEOC v. Federated Mutual Ins. Co.,* 16 F.E.P. cases 822 (N.D.Ga. 1977); *EEOC v. Brown Transport Corp.* 15 F.E.P. cases 1063 (N.D.Ga.1976); *EEOC v. National Cash Register Co.,* 405 F.Supp. 562, 566–67 (N.D.Ga.1975).

The reasonable cause determination at issue here falls far short of making any such finding on the sex discrimination claim now asserted against Sherwood. Indeed, the closest scrutiny of the determination could not have effectively placed Sherwood on notice that sex discrimination was a matter in issue. The only material reference to sex in the entire determination was the comment that statistical analysis indicated that there were clerical vacancies after July 9, 1973 sufficient to establish that "the exclusion of blacks, and particularly black males, has occurred." This comment was manifestly insufficient to afford Sherwood notice of the sex discrimination claim. If anything, the inference that should be drawn from the statement is that there was no discrimination against white males. Race discrimination was all that Sherwood could reasonably have viewed as being in dispute.

## IV. THE FAILURE TO CONCILIATE

Conciliation is the final step in an EEOC administrative proceeding and a condition precedent to the Commission's power to sue. The language of the statute admits of no exception. If the Commission finds reasonable cause it "shall endeavor to eliminate any such unlawful employment practice by informal methods of conference, concilia-

tion and persuasion", and only when conciliation "acceptable to the Commission" fails may it bring a civil action against the respondent. 42 U.S.C. § 2000e–5(b). The Courts have interpreted the statute to mean precisely what it says and it is thus now well established that failure to conciliate is fatal to a Title VII action brought by the Commission;[2] the suit or claim must be dismissed as premature. *Patterson v. American Tobacco Co.,* 535 F.2d 257, 271–72 (4th Cir. 1976); *EEOC v. Hickey-Mitchell Co.,* 507 F.2d 944, 947–48 (8th Cir. 1974); *EEOC v. Pearce Stevens Chemical Corp.,* 434 F.Supp. 1162, 1166–67 (W.D.N.Y.1977); *EEOC v. Federated Mutual Ins. Co., supra; EEOC v. E. I. duPont DeNemours and Co.,* 373 F.Supp. 1321, 1333–34 (D.Del.1974); *EEOC v. Westvaco Corp.,* 372 F.Supp. 985, 991–93 (D.Md.1974).

The record in this case, as counsel for the Commission concedes, establishes that conciliation on the sex discrimination claim was never offered and never attempted. The only subject of conciliation efforts was Dilligard's race discrimination charge; when the negotiations on that charge failed, the Commission filed suit without ever attempting to settle the sex discrimination claim. It would thus seem to follow that the sex discrimination aspects of the Commission's claim against Sherwood would have to be stricken from this case. But the Commission argues that it would be error to do so because the Commission need conciliate only the original charge of discrimination, not the additional discrimination claims which come to life during an investigation of the original charge. That is, as the Commission views it, its duty is to conciliate the charging party's charge only and if it is unable to reach a conciliation agreement on that charge it is under no obligation to seek settlement with respect to additional discriminatory employment practices developed during the investigation of the original charge. Under this theory only Dilligard's charge was required to be conciliated.

2. By contrast, conciliation by the Commission is not a condition precedent to the institution of a private action for relief under Title VII by an individual plaintiff. *See, Gamble v. Birming-*

*ham Southern R.R. Co., supra* at 688–89; *Danner v. Phillips Petroleum Co.,* 447 F.2d 159 (5th Cir. 1971).

This contention, if accepted, would run contrary to Congressional intent and could well have the affect of rendering the conciliation requirement an empty formality. The mandate that conciliation be attempted is unique to Title VII and it clearly reflects a strong Congressional desire for out-of-court settlement of Title VII violations. *See Culpepper v. Reynolds Metal Co.,* 421 F.2d 888 (5th Cir. 1970); *Oatis v. Crown Zellerbach,* 398 F.2d 496 (5th Cir. 1968). The legislative history of the 1972 amendments confirms that Congress viewed judicial relief as a recourse of last resort, sought only after a settlement has been attempted and failed.[3] Conciliation is clearly the heart of the Title VII administrative process. In light of the clear Congressional preference for conciliation it would be anomalous to conclude that the Commission is under no obligation to conciliate a claim of discrimination simply because it originated during the course of its investigation rather than from an aggrieved person's charge.

Certainly one can find no support for the Commission's position in the decisions dealing with the scope of the judicial complaint. To the contrary, every decision recognizing a right in the Commission to expand its investigation—and ultimately its judicial complaint—beyond the scope of the charging party's charge, has presupposed that the additional employment practices complained of were included in the conciliation attempt along with the original charge. In *EEOC v. Raymond Metal Prod. Co.,* 385 F.Supp. 907, 915 (D.Md.1974) for instance, the Court concluded:

" . . . the judicial complaint in an EEOC civil action may properly embrace, in addition to those allegations contained in the initial charge, any allegations of other discriminatory employment practices for which there has been an *investigation, a determination of reasonable cause and a genuine attempt at conciliation.*" (emphasis supplied)

The Fourth Circuit in *EEOC v. General Electric Co., supra* at 366, similarly stressed that the new discrimination developed from the Commission's investigation could be included in a civil suit provided that it was included in the reasonable cause determination and in the efforts to conciliate. Like language can be found in a long line of decisions concerning the scope of the Commission's judicial complaint. These decisions recognize a right in the Commission to pursue its investigation beyond the bounds of the original charge of discrimination. But in so doing they do not vest the Commission with the authority to pick and choose the matters to be conciliated.

■ The only construction of the statute which is at all in harmony with the Congressional desire for conciliation is that the Commission's authority to sue is conditioned upon full compliance with the administrative process—investigation, determination, and conciliation—with respect to each discriminatory practice alleged. "Congress, committed as it was to voluntary compliance, could not have intended that the Commission could attempt conciliation on one set of issues and, having failed, litigate a different set." *EEOC v. E. I. duPont de-Nemours and Company, supra* at 1336. Once having determined that a respondent has violated Title VII the Commission must

---

**3.** A reference to the legislative history of the Act appearing in *EEOC v. Westvaco Corp., supra* is particularly instructive:

" . . . Senator Dominick, the principle architect of the 1972 amendment that empowered the Commission to bring suit in its own name, stated that '[M]y amendment would take over at the level where conciliations fail' 118 Cong.Rec.S. 170 (Jan. 20, 1972). 'What the amendment does . . . is . . . provide for trial in the U.S. District Courts whenever the EEOC has investigated a charge, found reasonable cause to believe that an unlawful employment practice has occurred, and is *unable* to obtain voluntary compliance' 118 Cong.Rec.S. 221 (Jan. 21, 1972). Similarly, the Senior House Conferee on the 1972 amendment ventured the opinion that '*[O]nly if conciliation proves to be impossible* do we expect the Commission to bring action in federal district court to seek enforcement.' Cong.Rec.H. 1861 (Mar. 18, 1972). (remarks of Congressman Perkins, introduced in the Conference Report on House Resolution 1746)." (emphasis supplied) 372 F.Supp. at 988.

make a genuine effort to conciliate with respect to each and every employment practice complained of. In this way, the respondent is afforded a fair opportunity to weigh all the factors which must be taken into account in deciding whether to settle a dispute out of court, even if the charge of discrimination in dispute arose from the Commission's own investigation rather than the charging party's charge. And if litigation then results, all parties are assured that they have had a fair opportunity to settle every matter in dispute. The Congressional mandate that litigation be a matter of last resort will have been observed.

It is contended, however, that this Court lacks jurisdiction to inquire into the degree of the Commission's compliance with the conciliation requirements of Title VII, hence Sherwood's complaint that it was afforded no opportunity to conciliate the sex discrimination claim may not be heard. Essentially, the Commission takes the position that the scope of the matters sought to be conciliated is not a proper subject of judicial scrutiny; the Courts inquiry into its jurisdiction must cease upon proof that conciliation was attempted on at least some matters in dispute. This contention is without merit. The Court recognizes that the conciliation requirement of the statute is phrased in terms of conciliation "acceptable to the Commission"; and thus district courts are not empowered to second guess the Commission with respect to particular settlement negotiations. But the question in this case is not whether the Commission properly exercised its discretion during settlement negotiations, but whether it afforded the respondent Sherwood the opportunity to conciliate at all with respect to one of the claims asserted in its judicial complaint. It is frivolous to contend that the court lacks jurisdiction to decide this question. If the Commission is to seek relief in federal court it must be prepared to show that it has satisfied the jurisdictional prerequisites—including submitting the matters in issue to conciliation. It has not done so here and it therefore follows that suit on the sex discrimination claim was premature. This is a matter of subject matter jurisdiction, not of Commission discretion.

## V. CONCLUSION

As Judge Stapleton observed in *EEOC v. E. I. duPont deNemours and Company, supra,* the "Commission's power of suit and administrative process [are not] unrelated activities, [but] sequential steps in a unified scheme for securing compliance with Title VII". 373 F.Supp. at 1333. The Commission must substantially satisfy the requirements of each step in this process—investigation, determination and conciliation—before it can progress to the next. In the present case the Commission has bypassed two of the most essential—determination and conciliation. These defects may not be overlooked, and the sex discrimination claim must therefore be stricken. A separate order dismissing the Commission's sex discrimination claim will be entered. The race discrimination claim, of course, will remain pending and the issue for trial will be whether during the relevant period Sherwood discriminated against employees or prospective employees on the basis of race.

This Memorandum Opinion confirms the Court's ruling from the bench at the conclusion of the hearing on March 21, 1978.