EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

CROWN LIQUORS OF BROWARD,
INC., Defendant.

No. 76–6285–CIV–WMH.

United States District Court,
S. D. Florida.

Jan. 29, 1980.

Abner W. Sibal, General Counsel, E. E. O. C., Washington, D. C.; Theodore T. Grove, Jr., Trial Atty., EEOC, Atlanta, Ga., for plaintiff.

James Knight, Walton, Lantaff, Schroeder & Carson, Miami, Fla., for defendant.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

HOEVELER, District Judge.

This class action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to redress alleged discrimination in employment on the basis of race. The Equal Employment Opportunity Commission charges Crown Liquors of Broward, Inc. with practicing and maintaining policies of racial discrimination which permeate virtually its entire business enterprise. Presently pending for determination is Crown's motion for partial summary judgment which seeks to limit both the scope of this action and the class of persons on whose behalf relief may be sought.[1]

---

1. On January 2, 1979, the Commission's motion for class certification was granted. The scope of the class remains to be determined.

## BACKGROUND

This action was spawned by separate charges filed with the Commission by two former black employees of Crown. James C. Crawford and William H. Miller, hired by Crown as sales trainees and subsequently discharged, timely filed charges with the Commission alleging racial discrimination in their discharge. Miller subsequently filed an amended charge alleging that Crown discriminates against blacks as a class in its hiring practices.

Letters of determination, issued to Crown pursuant to the Commission's investigation, concluded that sufficient evidence existed to support each charge and that evidence existed from which it could be inferred that Crown engaged in a pattern or practice of racial discrimination against blacks. The reasonable cause determination issued upon the Miller charge specifically found that blacks as a class were underutilized and less than adequately represented in Crown's workforce. Efforts at conciliation proved unsuccessfull and this action followed.

The Commission's amended complaint charges Crown with general across the board racial discrimination. *See Johnson v. Georgia Highway Express*, 417 F.2d 1122 (5th Cir. 1969). Injunctive and declaratory relief as well as back pay is sought on behalf of all former, present, or future black employees or applicants for employment adversely affected by Crown's discriminatory practices which are alleged to include: (1) maintenance of discriminatory hiring and recruitment policies; (2) assignment of blacks to less desirable and lower paying positions; (3) refusal to promote or transfer blacks to more desirable positions and departments; and (4) discrimination against blacks in the terms, conditions, or privileges of their employment, including, *inter alia*, the maintenance of segregated job classifications and discriminatory testing and arrest and conviction records policies. Crown challenges the Commission's right to maintain an action broader in scope than the charges originally filed and seeks to limit the class on whose behalf relief may be sought.

## SCOPE OF THE ACTION

Crown first argues that the scope of this action must be restricted to the scope of the charges filed with the Commission, i. e., discrimination in hiring and discharge. Relying on *EEOC v. Bailey Co., Inc.*, 563 F.2d 439 (6th Cir. 1977), Crown maintains that the failure of a Commission member to file a pattern or practice charge pursuant to § 2000e–5(b), forecloses the Commission from instituting an action broader in scope than the original Crawford and Miller charges.

In *Bailey*, the court refused to allow a white female standing to allege racial discrimination against blacks where her Commission charge alleged discrimination based on sex. The Commission, although found to have such standing, was not permitted to proceed on its charge of racial discrimination. The Sixth Circuit, in affirming the district court, stated:

"The procedure to be followed when instances of discrimination of a kind other than that raised by a charge filed by an individual party and unrelated to the individual party, come to the EEOC's attention during the course of an investigation of the private party's charge is for the filing of a charge by a member of the EEOC and for a full EEOC investigation of that charge. Then the employer is afforded notice of the allegation, an opportunity to participate in a complete investigation of such allegation, and an opportunity to participate in meaningful conciliation should reasonable cause be found following the EEOC investigation." 563 F.2d at 448.

In *Bailey*, however, the types of discrimination clearly differed, i. e., sex v. race. Here, the discrimination alleged by Crawford and Miller is identical to that alleged in the Commission's amended complaint, i. e., race. That the Commission's allegations may be broader in scope than the charges originally filed is entirely proper. It is well settled that the scope of an individual's complaint is limited to the scope of the investigation which may reasonably

be expected to grow out of the charge of discrimination filed with the Commission. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). This standard applies with equal force to Commission initiated suits. *Bailey, supra* at 446 and cases cited therein; *See EEOC v. E. I. DuPont de Nemours and Co.*, 373 F.Supp. 1321, 1334–35 (D.Del.1974), *aff'd.* 516 F.2d 1297 (3rd Cir. 1975). That an investigation spanning the spectrum of Crown's employment practices may be expected to grow from the charges filed by Miller and Crawford is certainly not unreasonable.

■ The Commission's right to maintain suit is not without limitation, irrespective of the scope of its investigation. Thus, the Commission may not sue on a complaint broader in scope than the results of its investigation as contained in its reasonable cause determination. *See EEOC v. National Cash Register*, 405 F.Supp. 562, 566 (N.D. Ga.1975); *EEOC v. E. I. DuPont, supra* at 1336. The determination of reasonable cause defines the framework for conciliation, and conciliation of all claims sought to be litigated must be attempted prior to suit thereon. *EEOC v. Sherwood Medical Industries*, 452 F.Supp. 678 (M.D.Fla.1978); *EEOC v. Pierce & Stevens*, 434 F.Supp. 1162 (W.D.N.Y.1977); *EEOC v. Nat'l Cash Register, supra* at 564–67.

In discussing the purpose and requirements of the reasonable cause determination, the court, in *Sherwood Medical Industries, supra*, observed:

"Because of the importance of the reasonable cause determination as a means of finally drawing the investigation to a close, as an embodiment of the Commission's legal conclusions from the evidence, as a means of notice to the respondent and as a device to frame the issues for conciliation, it seems evident that any and all of a respondent's employment practices viewed by the Commission as probably discriminatory, must be explicitly included in the determination. That is, the Commission must make an express

finding in the determination concerning each employment practice which it concludes to be violative of Title VII. The Courts which have addressed themselves to this question have so concluded." 452 F.Supp. at 681–82. (citations omitted.)

This Court, therefore, must determine the scope of the determination letters issued upon the Crawford and Miller charges pursuant to the Commission's investigation. As stated in *EEOC v. E. I. DuPont, supra*:

"... the issues to be litigated here must be those which can fairly be said to be encompassed within the determination resulting from the Parker charge." 373 F.Supp. at 1336.

■ The reasonable cause determination issued to Crown upon the Miller charge concludes that blacks are underutilized and less than adequately represented among Crown's workforce. Specifically, the Commission found:

"Title VII permits the use of statistical probability to infer the existence of a pattern or practice of discrimination. Based on the evidence, we conclude that the Respondent is engaging and continuing to discriminate against Negroes as a class with respect to underutilization and representation in violation of Title VII."

The remainder of the Miller determination and the entire Crawford determination express findings concerning only the charging parties' allegations of discrimination in the hiring and discharge of salesmen trainees and stockmen. Although conclusions of broad based discrimination against blacks throughout Crown's enterprise do not appear to have been set forth with great particularity, their existence is sufficiently stated (on a motion for summary judgment) to permit the Commission to proceed on the amended complaint essentially as drawn. However, this Court can find no basis to permit the Commission's allegations concerning discriminatory testing and arrest and conviction records policies, and, accordingly, orders such allegations stricken from the amended complaint.[2]

---

2. The scope of the determination letters is subject to further inquiry and development either

at trial or prior thereto.

Crown next asserts the Commission's failure to conciliate as grounds to limit the scope of this action. Crown maintains that the Commission's attempt to conciliate was limited strictly to the individual grievances of Crawford and Miller. In *Sherwood Medical Industries, supra,* the court addressed the issue of conciliation:

"Conciliation is the final step in an EEOC administrative proceeding and a condition precedent to the Commission's power to sue. The language of the statute admits of no exception. If the Commission finds reasonable cause it 'shall endeavor to eliminate any such unlawful employment practice by informal methods of conference, conciliation and persuasion', only when conciliation 'acceptable to the Commission' fails may it bring a civil action against the respondent. 42 U.S.C. § 2000e–5(b). The Courts have interpreted the statute to mean precisely what it says and it is thus now well established that failure to conciliate is fatal to a Title VII action brought by the Commission; the suit or claim must be dismissed as premature." 452 F.Supp. at 682 (citations and footnotes omitted.)

■ Moreover, each claim sought to be litigated must have been subject to a good faith attempt at conciliation. In *EEOC v. Allegheny Airlines,* 436 F.Supp. 1300 (W.D. Pa.1977), the court precluded the Commission from proceeding on a complaint alleging employment discrimination in management, professional, or technician job classifications where the scope of the Commission's conciliations efforts was limited to issues pertaining to flight attendants:

"Once the Commission concluded that conciliation on 'the issues with respect to Mr. Herman' failed, it did not even attempt conciliation on 'all other issues.' In her affidavit, the EEOC conciliator says that each issue contained in the determination was 'introduced for possible conciliation' at the first meeting. Genuine conciliation was attempted, however, only on the flight attendant issue, since that aspect of conciliation was deemed essential and that to go on to other issues ... 'would be an inefficient use of Commission resources and personnel.' ... Under these circumstances, the lawsuit should be limited to resolving the flight attendant controversy." 436 F.Supp. at 1306.

On April 27, 1979, a hearing was held to determine the scope of the Commission's efforts to conciliate its findings of discrimination. No inquiry was made concerning the merits of conciliation. Introduced into evidence was the affidavit of Nelson Benedico, Equal Opportunity Specialist in the Commission's Miami District Office (See Plaintiff's exhibit 1). Regarding the Commission's efforts at conciliation, the Benedico affidavit states in pertinent part:

"6. On or about January 21, 1975, I telephoned Mr. Rosenthal [Crown's counsel] and initially discussed with him the Commission's conciliation process, the issues included within the determinations and generally the manner in which the parties may proceed in reaching a conciliation on all issues. I further advised Mr. Rosenthal that the investigation files and letters of determination in the subject cases indicated an underutilization of blacks and specifically mentioned respondent's poor showing on its EEO profile. Moreover, I informed Mr. Rosenthal that it was the Commission's procedure and position that some affirmative action language would have to be a part of any conciliation agreement dealing with such issues, and that I thought such affirmative action provisions could be fashioned to correct the underutilization found to exist, if the parties could reach an agreement on other matters.

7. Thereafter, the Commission and respondent engaged in a number of correspondences by mail relating to the relief sought for the charging parties.

8. After consultation with the charging parties, I proposed to Mr. Rosenthal certain individual relief provisions for the charging parties. I informed Mr. Rosenthal that the proposed relief for those persons would be confirmed in writing, which I did so confirm by my letter of January 31, 1975.

9. On February 7, 1975, I received a letter from Mr. Rosenthal requesting information we deemed unnecessary, unrelated or duplicative of information previously supplied.

10. I therefore contacted respondent and discussed the unreasonableness of the request and informed it that the Commission would determine conciliation efforts futile unless it would, in good faith, establish a position with respect to the conciliation of matters raised during previous discussions. At that time respondent had not addressed whether it was willing to discuss any relief mentioned by the Commission. This conversation was confirmed by letter, dated February 8, 1975, to Mr. Rosenthal with a copy thereof to Mr. Paul Sandler; my letter provided a seven day period in which the respondent could express its willingness to conciliate the matter in good faith. No response was received to my letter within such period."

In his letter confirming the Rosenthal conversation (Defendant's exhibit F), Benedico states in paragraph four:

"In accordance with the EEOC Procedural Regulations, Title 29 CFR 1601.23 (1972) we hereby advise you that the Commission will not resume conciliation efforts unless Respondent establishes a position towards concilation of these charges under the proposed terms, acceptable to the Charging Parties and EEOC and unless specifically requested to by you in writing within seven (7) days of receipt of this letter."

■ The above quoted language is sufficiently ambiguous to raise a question of fact as to the extent of conciliation in this cause. Summary judgment, therefore, is inappropriate. *Adickes v. Kress*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1969). However, if it is ultimately determined that "genuine conciliation" was attempted solely as to Crawford and Miller, individually, the scope of this action will be limited to preclude litigation of any claim of class discrimination.

## SCOPE OF THE CLASS

■ The remainder of Crown's motion raises issues concerning the scope of the class on whose behalf relief may be sought. Crown first argues that the class must be limited to those persons having the same grievances as Crawford and Miller. This Court cannot agree. Section 2000e–5(f)(1) gives the Commission "standing to sue to the same extent as individuals aggrieved by discrimination in employment." *EEOC v. D. H. Holmes Co., Ltd.*, 556 F.2d 787, 794 (5th Cir. 1977). This Circuit adheres to the view, at least in suits alleging across the board racial discrimination, that an individual may sue on behalf of a class whose members suffer from different practices so long as those practices are motivated by the same discriminatory policy and the named plaintiff can demonstrate a sufficient nexus thereto. *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 900 (5th Cir. 1978); *Long v. Sapp*, 502 F.2d 34 (5th Cir. 1974); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir. 1969). Here, the Commission's investigation commenced upon charges of racial discrimination. That investigation purportedly uncovered evidence of widespread racial discrimination throughout Crown's operation. Such circumstances, if proved, would appear to establish the requisite nexus between the discrimination originally charged and that now sought to be redressed.

Based on the foregoing, this Court must reject the position proposed by Crown. It would be anomalous to conclude that the Commission, which sues to vindicate the public interest, is subject to restrictions greater than those imposed upon an individual suing on behalf of a class under Title VII.

Crown next argues that the 180-day limitations period specified in § 2000e–5(e) operates to exclude from the class all persons whose claims accrued prior to the 180-day period before the filing of the first charge. Thus, Crown seeks to apply to the Commission the general rule that one may not sue on behalf of a class whose members have not filed charges with the Commission and

who could not have so filed within the statutory period preceding the named plaintiff's charge. *See Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3rd Cir. 1975); *Wilhite v. South Central Bell Tel. & Tel. Co.*, 426 F.Supp. 61, 65 (E.D.La.1976). The Commission's allegations, however, suggest that some of the claimed discriminatory practices fall within the established doctrine of continuing violations. *Clark v. Olinkraft, Inc.*, 556 F.2d 1219 (5th Cir. 1977); *Rich v. Martin Marietta Corp.*, 522 F.2d 333 (10th Cir. 1975); *Miller v. Miami Prefabricators*, 438 F.Supp. 176 (S.D.Fla. 1977). If so, the 180-day period is effectively tolled.

■ The critical question is whether any present violation exists. *United Air Lines, Inc., v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 53 L.Ed.2d 423 (1977). Relevant to this determination is whether the act complained of took place on a particular day as opposed to having arisen over a lengthy period of time. *See Rich v. Martin Marietta Corp., supra.* Thus, acts concerning hiring and termination do not constitute continuing violations, while policies concerning promotion and pay generally qualify to toll the statutory period. *Clark v. Olinkraft, supra; United Air Lines v. Evans, supra.*

■ Based on the foregoing, it would appear proper to exclude from the class the following persons: (1) black applicants who submitted applications to Crown more than 180 days prior to December 18, 1973, the date on which the first charge (Crawford's) was filed; and (2) former black employees terminated more than 180 days prior to December 18, 1973. It is so Ordered.

■ Finally, Crown asserts Fla.Stat. § 95.11(4), to limit the class of persons on whose behalf suit may be maintained for back pay. Section 95.11(4) specifies a two-year period of limitations applicable to actions for wages. Crown, therefore, seeks to exclude from the class individuals whose claims accrued prior to the two-year period preceding April 10, 1978, when the Commission's amended complaint was filed.

Crown's argument is foreclosed by the Supreme Court's decision in *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In *Occidental*, the Commission sued on behalf of a female employee for alleged discrimination in employment based on sex seeking injunctive relief and back pay under Title VII. The trial court dismissed the complaint finding, *inter alia*, that suit had not been brought within California's one year statute of limitations. The Ninth Circuit reversed. *Equal Employment Opportunity v. Occidental Life*, 535 F.2d 533 (9th Cir. 1976), aff'd, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). In so doing, the court expressly rejected the Fifth Circuit's position regarding the private nature of back pay, *See, EEOC v. Giffin Wheel Co.*, 511 F.2d 456, aff'd on rehearing, 521 F.2d 223 (5th Cir. 1975), (Commission suit for back pay private in nature and therefore subject to state limitations period), and observed (535 F.2d at 537–40) that back pay promotes the underlying policies of Title VII.[3] In af-

---

**3.** Any remaining doubt regarding the nature of Title VII claims for back pay was dispelled by the Supreme Court in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975):

"As the Court observed in *Griggs v. Duke Power Co.*, 401 U.S. [424], at 429–430, 91 S.Ct. 849, at 853, 28 L.Ed.2d 158, 163, the primary objective [of Title VII] was a prophylactic one:

"It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees."

Backpay has an obvious connection with this purpose. If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a back-pay award that "provide[s] the spur of catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history." *United States v. N. L. Industries*, 479 F.2d 354, 379 (CA8 1973).

"It is also the purpose of Title VII to make persons whole for injuries suffered on account of unlawful employment discrimination." *Id.* at 417–18, 95 S.Ct. at 2371–2372.

firming the Court of Appeals, the Supreme Court rejected application of varying state statutes of limitations as potentially dangerous to the Commission's function, as expressed by Congress, to investigate and pursue settlement of claims of employment discrimination. 432 U.S. 355, 368–71, 97 S.Ct. 2447, 2455–2457, 53 L.Ed.2d 402 (1977).

The foregoing establishes the Commission's immunity from the application of Fla. Stat. § 95.11(4). That this result does not operate unfairly in a class action suit brought by the Commission is made clear by the fact that the 180-day filing requirement of § 2000e–5(e) automatically limits the class to persons whose claims could have been filed within the 180-day period immediately preceding suit.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED and ADJUDGED as follows:

(1) The Commission's allegations concerning discriminatory testing and arrest and conviction records policies are hereby stricken from the amended complaint;

(2) The class of persons for whose benefit this action is brought shall tentatively consist of all former, present, or future black employees, or applicants for employment, adversely affected by Crown's allegedly discriminatory practices, excluding black applicants who submitted applications to Crown more than 180 days prior to December 18, 1973, and former black employees terminated more than 180 days prior to December 18, 1973; and

(3) In all other respects, Crown's motion for partial summary judgment is denied.