**Alpha M. COOK, on behalf of herself and all other persons similarly situated, Plaintiff,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, et al., Defendants.**

**Civ. No. 74–453 PHX (WEC).**

United States District Court,
D. Arizona.

July 17, 1975.

Lemberg, Green, Lester & Walsh, Phoenix, Ariz., for plaintiff.

Fennemore, Craig, von Ammon & Udall, Crockett, Phoenix, Ariz., for defendants Mtn. States Tel. & Telegraph.

John W. McKendree (admitted), Denver, Colo., and McKendree & Lubin, Phoenix, Ariz., for defendants.

## ORDER FOR PARTIAL SUMMARY JUDGMENT

CRAIG, Chief Judge.

The named plaintiff initiated this law suit as a class action against the above captioned defendants. The Complaint consists of three separate claims for relief, denominated "counts", and based respectively on the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, The Equal Pay Act of 1963, 29 U.S.C. § 206(e); and the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 151 *et seq.* The gravamen of plaintiff's allegations lie in a pay differential which existed between the job classifications of "janitor" and "janitress" under several collective bargaining agreements entered into between defendants, Communications Workers of America, A.F. of L.—C.I.O. (hereinafter referred to as CWA) and Mountain States Telephone and Telegraph Company (hereinafter referred to as Company). Plaintiff alleges that such pay differentials were based solely on sex and thus were violative of those duties imposed under the above designated statutes.

Two motions for summary judgment presently are before the court. First, the national union, CWA, and its local organization, Local 8519, have filed a Motion for Summary Judgment which will be referred to as the Unions' Motion for Summary Judgment. Adtionally, the Company has filed a separate Motion for Summary Judgment which raises an issue which the court already will have considered in disposing of the Unions' motion. Hence, the disposition of the issues presented by the Unions will be dispositive of both motions.

### THE UNIONS' MOTION FOR SUMMARY JUDGMENT

The defendant Unions base their motion on four contentions. First, it is the position of the Unions that judgment should be granted in their favor as to Count 1 of the Complaint because neither the named plaintiff nor the Equal Employment Opportunity Commission (EEOC) properly deferred plaintiff's charge of discrimination to the relevant Arizona civil rights agency as required by 42 U.S.C. § 2000e–5(c). Second, the national union, CWA, sets forth an additional reason for granting it judgment as to Count 1 in that neither of the two charges which the plaintiff filed with the EEOC named the national union as an offending party. Third, the Unions contend that judgment should be rendered in their favor on Count 2 of the Complaint because the Equal Pay Act of 1963 does not provide for the award of civil damages against unions. Fourth, it is contended that judgment should be awarded in favor of the Unions as to Count 3 of the Complaint on the basis that the plaintiff failed to exhaust her contractual and internal union remedies.

*Failure to Defer to the Arizona Civil Rights Advisory Board*

Plaintiff's first claim for relief is brought against the defendant Unions based on a violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5(c) provides in pertinent part:

in the case of an alleged unlawful employment practice occurring in a

> State . . . which has a State or local law prohibiting the unlawful employment practice alleged and establishing . . . a State or local authority to grant . . . relief from such practice . . ., no charge may be filed under subsection (b) . . . before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, . . .

Since Arizona has a law establishing a civil rights division, Ariz.Rev.Stat.Ann. § 41–1401, and since this state also has a law prohibiting discrimination on the basis of sex in employment, Ariz.Rev. Stat.Ann. § 41–1463, it would appear that it comes within the purview of the above quoted federal statute. *Motorola, Inc. v. E.E.O.C.*, 460 F.2d 1245 (9th Cir. 1972). Examination of plaintiff's Complaint reveals that it does not contain any allegations concerning deferral pursuant to the requirements of 42 U.S. C. § 2000e–5(c). The Unions point out this deficiency, allege that failure to comply with the deferral requirement of § 2000e–5(c) is jurisdictional and seek judgment in their favor on Count 1.

Plaintiff responds by asserting that failure to defer pursuant to § 2000e–5(c) is not a jurisdictional defect. In support of this proposition, the plaintiff cites the court to the case of *Crosslin v. Mountain States Tel. & Tel. Co.*, 422 F.2d 1028 (9th Cir. 1970), *cert. granted, opinion vacated and remanded for further consideration*, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971). In *Crosslin*, when the action was before the 9th Circuit originally, that court held that failure to exhaust state remedies pursuant to § 2000e–5(c) was a jurisdictional defect. This decision subsequently was appealed to the United States Supreme Court. That Court vacated the 9th Circuit resolution in *Crosslin* and remanded the case back to the District Court of Arizona for "reconsideration in light of the suggestions

contained in the brief of the Solicitor General, as amicus curiae, filed November 19, 1970." The Court went on to say, however, that "[b]y this remand this Court intimates no view as to the merits of the Solicitor General's position." The 6th Circuit apparently secured a copy of the Solicitor General's amicus brief before the Supreme Court in *Crosslin* and quoted the language from that brief to which the Supreme Court's opinion appears to have been referring. The Solicitor General wrote:

> The issue of the validity of EEOC's interpretation of Section 706(b) [42 U.S.C. § 2000e–5(c)] is not in our view, of sufficient importance to warrant review by this Court at this time. We believe, however, that even if the court of appeals correctly rejected EEOC's interpretation, the court erred in treating the failure to defer to the state agency as a complete bar to judicial relief for the alleged discrimination. We, therefore, suggest that this Court should grant certiorari for the limited purpose of ordering the case to be remanded to the district court with instructions to retain jurisdiction for a period sufficient to allow petitioner to seek redress through the Arizona Civil Rights Commission.

*Mitchell v. Mid-Continental Spring Co.*, 466 F.2d 24, 26 (6th Cir. 1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973). Following this suggestion, the district court judge in *Crosslin* retained jurisdiction and deferred the action to the Arizona state agency pursuant to the Solicitor General's suggestion. Civ. No. 6863 PHX (CAM). Similarly, when the 9th Circuit subsequently has considered the issue of whether failure to exhaust state agency remedies pursuant to § 2000e–5(c), it has directed the district court to:

> . . . retain jurisdiction for a time sufficient to allow the EEOC to notify the Arizona Civil Rights Commission and to allow that com-

mission the statutory deferral period in which to act upon it. . . . If the Arizona commission elects not to act, the district court may then proceed as the rights of the parties may then appear. . . .

Motorola, *Inc. v. E.E.O.C.*, 460 F.2d at 1246.

There seems to be, however, some movement away from this approach in instances of failure to comply with § 2000e-5(c). In *General Insurance Co. of America v. Equal Opportunity Employment Commission*, 491 F.2d 133 (9th Cir. 1974), one panel of the Court of Appeals stated the following dicta:

The Commission contends that even should we hold that deference to state authority was required before this claim could be entertained under § 706(b), the District Court at the most should defer enforcement rather than deny it outright. The Commission refers to the form of mandate employed by this court in *Motorola, Inc. v. E.E.O.C.*, 460 F.2d 1245, 1246 (9th Cir. 1972). There the District Court was instructed to retain jurisdiction while the Federal Commission notified the appropriate state commission and "allow[ed] that commission the statutory deferral."

The source of this procedure was a suggestion by the Solicitor General made to the Supreme Court in *Crosslin et vir v. Mountain States Telephone and Telegraph Co.,* 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971). The Supreme Court declined to intimate any views as to the merits of the suggestion but vacated the judgment of this court (appearing at 422 F.2d 1028, 9th Cir.) and remanded the case to the District Court to appraise the suggestion. The District Court embraced it.

The trouble with this procedure is that it permits the Commission, contrary to legislative intent, to roil the waters with its own investigation and conciliatory efforts and defer to state authority only if required by court order to do so and then at a time when its own unsuccessful efforts have rendered any subsequent state efforts meaningless.

The Commission would, we think, be wise to recognize that while the procedure followed in *Motorola* may be appropriate when the Commission's neglect was due to good faith oversight or error of law, it would hardly be appropriate otherwise.

491 F.2d at 135–36 n. 2. Even more recently, a member of this court granted a Motion to Dismiss in *Corne v. Bausch and Lomb, Inc.,* 390 F.Supp. 161 (WCF) on the basis that the charge had not been presented to the relevant state agency. The court said:

Here no State proceedings were instituted, no attempt was ever made to grant the State of Arizona jurisdiction to act. Clearly this is a violation or disregard of the intent and direction of the statute.

. . . . . .

What E.E.O.C. and the Courts are doing by ignoring the clear mandate of Congress as to prerequisites set forth in the Act before a suit can be filed, is to load up the trial Courts with cases of this nature which may very well have been disposed of at the state or federal administrative level. It is to the advantage of all concerned that civil rights complaints of this nature, involving employment, be simply and expeditiously handled at the administrative level. Congress was clear in stating its intent and in setting forth the procedures. They should be followed. For the Courts to hold that these prerequisites are not jurisdictional is to defeat the clear intent and mandate of Congress and create just another federal lawsuit with attendant cost and delay to the parties.

*It is ordered* that defendants' Motions to Dismiss, are granted and the complaint, is dismissed.

Pages 6–7 of Memorandum and Order, filed May 14, 1975 in Civ. 74–173 TUC (WCF).

■ In the event the court were to decide to follow the traditional path and require the plaintiff to present his Charge of Discrimination to the state agency, the defendant contends that the state agency would lack the authority to consider the charge since it was not presented within the statutory period set forth in Ariz.Rev.Stat.Ann. § 41–1481(A). This proposition was addressed by the district court following the remand in *Crosslin*. The district judge stated in his Order of June 3, 1971, "since the Supreme Court had almost all of the present arguments before it, and the Supreme Court suggested plaintiffs' action in filing with the Arizona Commission, which defendant now argues came too late, this Court would have to find that the remand by the Supreme Court was a nullity in order to grant defendant's motion." Although what the district judge says may be true, that may not dispose of defendants' contention. If a state statute limits the time period within which a state agency may act, it is unclear to this court how the order of a federal judge, to the effect that an employment charge now must be presented to that agency, could give that state agency the authority to act on that charge. In fact it would seem, since there is no constitutional problem with the limitation period set forth in the state statute, that nothing said by either a Federal District Court Judge nor a decision by the United States Supreme Court could give a state agency the authority to act where the state legislature expressly has limited its authority to act. Cf. Ariz.Rev.Stat.Ann. § 41–1402(A)(2). It, therefore, does not seem that there exists any procedure by which the charge presently before this court possibly could be brought into compliance with the state agency exhaustion requirement of § 2000e–5(c). Hence, since this court is unwilling entirely to disregard that provision in Title VII of the Civil Rights Act, it is concluded that the failure to comply with that provision, at least under the facts of this case, would be jurisdictional.

Having reached the above conclusion, however, does not necessarily mean that plaintiff's Title VII claim must be dismissed. An examination of the pleadings reveals that there were two charges filed with the EEOC. The first was filed in September 1972. (Exhibit A of the first affidavit of Dorothy E. Mead). There appears to be no dispute among the parties that this 1972 EEOC charge was appropriately deferred to the relevant Arizona civil rights agency. Subsequently, the plaintiff filed another charge with the EEOC in November of 1973. (Exhibit G of the first affidavit of Dorothy E. Mead). It is plaintiff's position that this second EEOC charge, which admittedly was not referred to the relevant state agency, was merely an amendment to the earlier charge.

Title VII itself does not provide for any amendment of Charges of Discrimination. The authority for amending such charges is derived from EEOC regulations. Specifically, 29 C.F.R. § 1601.11 provides:

> A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such *amendments alleging additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge* will relate back to the original filing date.

(Emphasis added). The significant language in the above regulation, involves the determination of whether the information contained in the most recent charge can properly be categorized as "additional acts . . . directly related to or growing out of the subject matter of the original case . . . . "

The Complaint contained in the original 1972 charge was as follows:

> I and my female co-workers are employed by above employer and are being subject to hardships in terms and conditions of employment and wage. Negroes, including males, are subjected to hardships in regard to our seniority which affects us as a class. We feel that we are being discriminated against because of our sex (female) and because of our race, including males (Negro).

The Complaint set forth in the 1973 charge was as follows:

> The above employer maintains segregated job classifications based on sex within its janitorial department. Female employees are classified as "Janitresses" and male employees are classified as "Janitors". Janitresses are paid lower wages than janitors although they perform the same or similar work. The above named labor organization contractually condones the discriminatory practices of the above named employer. The company pays temporary male supervisors overtime pay while these wages are denied females who are temporary supervisors.

■ Although the Complaint contained in the 1973 charge appears to be considerably more specific, it does seem to come within the purview of the EEOC regulations allowing subsequent charges to relate back. The defendant Unions do not argue very vehemently that the Complaint contained in the 1973 charge does not relate to and arise out of the Complaint contained in the 1972 charge. Rather, the defendants point to the 14 months which intervened between the filing of the two charges and the fact that most of the cases, even those cited by the plaintiff in support of his argument, relate to rather technical amendments to the original charges. The court, however, does not find these deficiencies to be determinative and is disposed to allowing the second charge to be classified as an amendment to the first. The effect of reaching this conclusion is to obviate the need for a deferral of the second charge by allowing it to relate back to the properly deferred first charge.

■ A further problem exists in allowing the second charge to "relate back" to the original filing date, i. e., whether the relation back will be effective against all the named defendants. Only the Company was named in the original charge filed with the EEOC, while both the Company and the local union were named in the 1973 charge. Plaintiff cites *Black Musicians of Pittsburgh v. Musicians Local 60–471*, 375 F.Supp. 902 (W.D.Pa.1974) in support of the position that the relation back should be effective against the local union as well as the Company. Although that case generally supports plaintiff's position, the court in *Black Musicians* did not go into extensive reasoning as to why it was allowing the "relation back" to be effective against parties not named in the original charge. The court did seem to be persuaded, however, by the fact that while the second charge was given a different number than the first, it was entitled an "Amended Charge". Further, the EEOC appeared to be treating the second charge as an amendment to the first. This situation seems to exist in the suit presently before this court, with the additional factor that not only is the second charge entitled an "Amended Charge", but also the number assigned to both charges are the same. Further, to adopt this approach would not seem to be violative of any purpose or provision of Title VII. The Arizona agency was given the opportunity to investigate the claim in 1972 and there seems no reason to conclude that they would have exercised that opportunity if the local union as well as the Company had also been named in that charge. Hence, the relation back of the second charge will be effective as to both parties named therein, and the Unions' Mo-

tion for Summary Judgment on Count 1 will be denied.[1]

### Neither EEOC Charge Named the National Union

The Unions' Motion for Summary Judgment next asserts a second challenge to the validity of Count 1 of plaintiff's Complaint. Specifically, it is contended that the failure of the plaintiff to name the national union, CWA, in either of the charges filed with the EEOC, prevents the joinder of that entity as a defendant in a Civil Rights action brought pursuant to Title VII. Neither party disputes that this is the general rule. Plaintiff, however, contends that there exists at least 4 exceptions to that general rule. These are (1) when a party who is named in the EEOC charge has acted in concert with the party not named in the charge, or where there is a "common enterprise of discrimination" between the party named and the one who is not named; (2) when a party named in the EEOC charge is an agent of the party not named in the charge; (3) when it is difficult to determine the identity of the prospective defendant and it is for this reason that he is not named in the EEOC charge; (4) when a party named in the EEOC charge adequately protects the interest of the party not named in the charge.

Concerning the first of these exceptions, plaintiff contends that her Complaint adequately alleges a "common enterprise of discrimination". In this regard, plaintiff cites the court to paragraphs XIV and XV of the Complaint. These paragraphs allege as follows:

### XIV.

Defendants CWA and LOCAL 8519 have followed and continue to follow a policy of employment discrimination on the basis of sex and have intentionally engaged in employment practices made unlawful by Title VII, including but not limited to the following:

1. Negotiating, entering into, and adhering to collective bargaining agreements with defendant COMPANY which provide for the separate and discriminatory job classifications of 'janitor' and 'janitress,' with a lower wage being paid to those in the 'janitress' classification.

2. Cooperate with the defendant COMPANY and causing, encouraging and participating in the unlawful employment practices described above in paragraphs XII and XIII.

3. Failing and refusing to negotiate collective bargaining agreements which would correct and eliminate the policies and practices described above.

---

1. Another argument put forth by the plaintiff was that it was never necessary for the 1973 Charge of Discrimination to be deferred to the Arizona state agency. Support for this position is based on plaintiff's contention that in November of 1973, Arizona did not have a state agency to which the EEOC was required to defer charges of discrimination. Since this issue was not thoroughly briefed by both parties and since the court is able to dispose of this action on other grounds, the court does not finally decide the above issue in this case. A cursory examination of the law and facts on this matter, however, indicates that subsequent to the decision in *Crosslin* wherein it was concluded that the Arizona state agency was a deferral agency within the purview of 42 U.S.C. § 2000e–5(c), the Equal Employment Opportunity Commission promulgated certain standards and requirements which had to be met before a state agency was to be designated a "706 agency", such that deferral to it was required by § 2000e–5(c). *See* 29 C.F.R. § 1601.12. Since the promulgation of such standards and requirements does not appear to be contrary to any Congressional purpose underlying Title VII of the Civil Rights Act of 1964, but rather merely the exercise of appropriate agency discretion and since the second affidavit of the deputy director of the Phoenix district office of the EEOC states that in November of 1973, the relevant Arizona civil rights agency was not an appropriate § 706 deferral agency, it would appear that there may be some validity to plaintiff's assertion that deferral of the 1973 charge was never required by 42 U.S.C. § 2000e–5(c).

## XV.

Defendants CWA and LOCAL 8519, by their conduct and practices described in the preceding paragraph have:

(a) . . . .

(b) . . . .

(c) caused and attempted to cause defendant COMPANY to discriminate against plaintiff ALPHA M. COOK and the class she represents, in violation of Section 703(c)(3) of Title VII.

In defendant's Reply memorandum, they suggest that the court should disregard the "common enterprise of discrimination" exception and strictly apply the language of § 2000e–5(f)(1). Cf. *Lebeau v. Libby-Owens-Ford Company*, 484 F.2d 798 (7th Cir. 1973). Alternatively the Unions argue that the allegations contained in paragraphs XIV and XV of plaintiff's Complaint do not set forth adequate facts to support a finding of a "common enterprise of discrimination". Upon an examination of the above quoted paragraphs, the court is satisfied that in light of the liberal rules of pleading in effect in the federal courts, the named plaintiff has sufficiently plead a cause of action based on a "common enterprise of discrimination".[2]

The second exception put forth by plaintiff is that the local union was merely acting as an agent of the national, and hence failure to name the national in the EEOC charge should not deprive this court of jurisdiction over CWA. Although the plaintiff asserts this as a separate exception, examination of the cases dealing with this exception indicate it generally is treated in conjunction with the first and fourth exception cited by the plaintiff. *See*

generally, *Tippett v. Liggett & Myers Tobacco Co.*, 316 F.Supp. 292 (M.D.N. C.1970). It will therefore be considered in that manner here.

Concerning the third exception, it is unclear whether the plaintiff is merely setting this exception forth in her memorandum to show that it exists, or whether she believes it to be applicable to this case. Its only possible applicability here would be the plaintiff's contention that she did not name the national in the second charge because she was unaware of its existence or unaware that she was a member of it. This is too subjective a reason for the court to put much credence in. Additionally, it is not the type of difficulty in identifying the prospective defendant to which the exception appears intended to apply.

■ The last exception which the plaintiff asserts should excuse her failure to name the national in her EEOC charge is that the national, CWA, was adequately represented at all the proceedings before the EEOC. The very close relationship between the local and national unions is apparent from an examination of the bargaining agreement and the affidavits submitted in this case which indicate that the national received notifications of all the EEOC proceedings and in fact, its representatives were actively involved in the attempts at conciliation. *Hardison v. Trans World Airlines*, 375 F.Supp. 877 (W.D.Mo.1974). Accordingly, it appears that their interests adequately were protected before the EEOC.

The National Union's Motion for Summary Judgment on Count 1 due to the fact that it was not named in either EEOC charge is therefore denied.

---

2. Even if this court considered plaintiff's pleading of paragraphs XIV and XV to be insufficient to establish a claim of "common enterprise of discrimination", it would follow the suggestion set forth in *Tippett v. Liggett & Myers Tobacco Co.*, 316 F.Supp. 292 (M.D. N.C.1970) wherein it was believed more de-

sirable to allow the plaintiff additional time to complete discovery concerning whether the international union had been involved in a common enterprise of discrimination with the local which had been named in the EEOC charge.

*Unions Not Subject to Civil Damages Under Equal Pay Act of 1963*

█ Plaintiff's second count alleges that there has been a violation of the Equal Pay Act of 1963 and that she is entitled to civil damages pursuant to 29 U.S.C. § 216(b). This section provides in pertinent part as follows:

(b) Any employer who violates the provisions of section 6 or section 7 of this act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained against any *employer* (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

. . .

(Emphasis added). It is clear that under the language of the statute, only an employer would be liable for back wages and civil damages. However, plaintiff cites the court to *Hodgson v. Sagner, Inc.*, 326 F.Supp. 371 (D.Md. 1971), *aff'd sub nom., Hodgson v. Baltimore Regional Joint Board*, 462 F. 2d 180 (4th Cir. 1972) (per curiam). In that case, the court concluded that it was within "its general equitable powers" to award damages against the union although the language of the civil liability statute related only to employers. No other case adopting this view was cited by plaintiff. In *Love v. Temple University*, 366 F.Supp. 835 (E.D. Pa.1973) the court considered the pros and cons of this issue. In analyzing the cases on both sides, it appears that they weigh heavily in favor of limiting the back-pay and civil damages language contained in § 216(b) only to employers. This result is understandable as the language of § 216(b) is clear—it refers to employers. By comparison, see § 216(a) which refers to "any person".

Accordingly, this court will follow the opinion in *Tuma v. American Can Company*, 367 F.Supp. 1178 (D.N.J.1973) limiting the backpay and civil damages provision to employers and granting defendant Unions' Motion for Summary Judgment as to Count II.

*Plaintiff's Failure to Exhaust Contractual and Internal Union Remedies*

The third count of plaintiff's Complaint alleges a violation of the Labor Management Relations Act of 1947, as amended, in that the defendant Unions failed to properly represent her. More specifically, it is alleged that her discrimination grievance was not processed by the Unions with diligence and also that the presence of the "janitor" and "janitress" job classifications in the collective bargaining agreement indicated that the Unions were not properly representing the interests of female employees. It is alleged by the Unions that she did not completely exhaust all her contractual and union remedies in pursuing her grievances, both with the Company and with the Unions.

██ While cases have held that a union member has a responsibility to pursue contractual and internal union remedies, this does not mean that every possible avenue must be exhausted. *See generally, Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842 (1967); *Southern Pac. Co. v. Brotherhood of Locomotive Firemen and Enginemen*, 129 U.S.App.D.C. 236, 393 F.2d 345 (1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1803, 20 L.Ed.2d 651 (1968). In this case, she did present her grievance to her local union steward, and in fact, it was her union steward who suggested, eventually, that her best recourse would be to pursue a civil action by filing a charge with the EEOC. It would be unconscionable now to allow the Unions to assert that because she followed the advice of her union steward and filed the charge with the EEOC, that the Unions should be released from

liability because she did not pursue the matter further with the Unions. Accordingly, the Unions' Motion for Summary Judgment on Count 3 will be denied.

*Summary*

Summarizing the Unions' Motion for Summary Judgment, they have asserted four arguments in an effort to secure a favorable judgments on all three counts. It is the decision of this court (1) that Summary Judgment is denied on the Unions' first argument concerning the alleged failure to defer the EEOC charge on the basis that the second charge related back to the first charge which was properly deferred pursuant to the requirement of 42 U.S.C. § 2000e–5(c); (2) that Summary Judgment on Count 1 is denied the national union on its second argument that failure to name the CWA in either EEOC charge prevents its being named in a Title VII action, on the basis that the facts of this case indicate it comes within the common enterprise of discrimination and adequate representation exceptions; (3) that Summary Judgment is granted as to Count 2, on the basis that 29 U.S.C. § 216(b) limits civil liability employers; (4) that Summary Judgment on Count 3 is denied on the basis that whatever deficiencies there may have been in plaintiff's pursuing her contractual and internal union remedies, this was at least partially caused by the unions' agent suggesting she pursue her remedies before the EEOC.

### COMPANY'S MOTION FOR SUMMARY JUDGMENT

The Company's Motion for Summary Judgment is based solely on the fact that the plaintiff's second EEOC charge was not deferred to the relevant state agency pursuant to 42 U.S.C. § 2000e–5(c). All the arguments set forth in discussing the position of the Unions to the position between the Company and the plaintiff. Accordingly, the same result is reached, i. e., the defendant Company's Motion for Summary Judgment is denied on the basis that the second charge filed with the EEOC is considered to "relate back" to the original charge filed in 1972 which was properly deferred to the relevant agency.

It is so ordered.