EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

The INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS (I. B. E. W.) and its Local 103, Defendants.

Civ. A. No. 77–3675–G.

United States District Court, D. Massachusetts.

Sept. 13, 1979.

---

342

Lanier E. Williams, EEOC Phila. Reg. Office of Gen. Counsel, Philadelphia, Pa., for plaintiff.

Elihu I. Leifer, Terry R. Yellig, Sherman, Dunn, Cohen & Leifer, Washington, D. C., for Carl Goodman.

Wallace W. Sherwood, Boston, Mass., for Local 103.

John P. Flynn, Murphy, Lamere & Murphy, Braintree, Mass., for defendants.

## MEMORANDUM OF DECISION

GARRITY, District Judge.

The Equal Employment Opportunity Commission (hereinafter "EEOC") brought this Title VII enforcement proceeding against the International Brotherhood of Electrical Workers (hereinafter "International") and IBEW Local 103 (hereinafter "Local 103") to redress retaliation in violation of Section 704(a), 42 U.S.C. § 2000e–3(a). The individual aggrieved by the alleged retaliation, Carl Goodman, was allowed to intervene, pursuant to 42 U.S.C. § 2000e–5(f)(1), and he filed his own complaint claiming that the International and Local 103 violated Title VII, the Thirteenth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1981, 1983, 1985 and 1988[1] and, basing jurisdiction on 28 U.S.C. § 1343, 29 U.S.C. § 151 et seq. and the special jurisdictional grant in Title VII. Now before the court is the International's motion for judgment on the pleadings or, in the alternative, for summary judgment against the EEOC. The International argues that Goodman's failure to name the International in his charge, the EEOC's failure to include the claims against the International, as well as the International itself *by name*, in the Reasonable Cause Determination contained in its Letter of Determination and to notify the International of the charge, and the total lack of any efforts on the part of the EEOC to conciliate with the International before bringing suit deprive this court of subject matter jurisdiction over the Title VII claim against the International.[2]

Upon consideration of lengthy briefs and oral argument we grant the International's motion. Since affidavits have been filed, we treat the motion as for summary judgment and find that there is no genuine issue as to any material fact concerning the involvement of the International with the actions of which the EEOC complains and concerning the steps taken by the EEOC with respect to the International before bringing this lawsuit. We conclude that the International is entitled to judgment as a matter of law and order that summary judgment be entered in favor of the International.

---

1. Section 1988 of Title 42 creates no substantive rights and therefore cannot serve as the basis of a private claim. Moreover, because 42 U.S.C. § 1985(3) cannot be invoked to redress violations of Title VII after *Great American Fed. S. & L. Assn. v. Novotny,* —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957, Goodman's § 1985(3) claim might be open to dismissal as well. *See generally, id.,* at ——, n. 6, 99 S.Ct. 2345.

2. Of course, the EEOC claim against Local 103 remains after this motion in any event, as do Goodman's claims against the International and Local 103.

The factual background is as follows: Carl Goodman, the intervenor, was employed by the Massachusetts Bay Transportation Authority (hereinafter "MBTA") as a journeyman electrician, having been referred to the MBTA by his union, Local 103. In September 1974 Goodman was laid off from his job, and on October 2, 1974 he filed a charge with the Massachusetts Commission Against Discrimination (hereinafter "MCAD") protesting racial discrimination by the MBTA and Local 103 in the layoff. On October 7, 1974, the MBTA ordered Goodman back to work over the opposition of Local 103, apparently as an affirmative action measure. After unsuccessful efforts to convince Goodman voluntarily to resume his layoff status in the order of his seniority, Local 103 then notified Goodman on November 8, 1974 that he must appear before Local 103's Trial Board to answer charges filed by Local 103's business agent. These charges included violations of the Building Trades and MBTA Agreement, Article XVI; the L.U. 103 IBEW and NECA Agreement, Fundamental Principles (sec. 11), Article V, secs. 1, 3, 5; the L.U. 103 Bylaws, Article XIV, sec. 8, and, of particular importance for the instant case, the IBEW Constitution, Article XVII, sec. 1 (requiring exhaustion of intra-union remedies by a local union), Article XXII, sec. 4 and Article XXVII, sec. 1, subsecs. 1, 3, 8, 9, 11 (quoted *infra*).[3] On December 6, 1974, after a hearing before Local 103's Trial Board, Goodman was convicted of all charges and fined $1000. Thereafter, according to the EEOC Letter of Determination, Local 103 once again tried to convince Goodman to accept layoff status, offering to suspend the fine if he did so.

On March 5, 1975, Goodman filed a charge of discrimination with the EEOC based on violations of Section 704(a) of Title VII against Local 103 only, not naming the International. He alleged that the $1000 fine was imposed in retaliation for his having filed the original charge with MCAD. The EEOC on March 19, 1975 sent a Notice of Charge, again only to Local 103. Following an investigation, the EEOC issued a Letter of Determination on May 27, 1976 finding reasonable cause to believe that the charge was true. The Letter of Determination named Local 103 as the only respondent and cited only Local 103's actions in fining Goodman and offering to suspend the fine. Subsequent efforts to conciliate with Local 103 were attempted, without success. A 29 CFR 1601.23 Notice, notifying the respondent of the Commission's decision to end its unsuccessful conciliation efforts unless the respondent requests resumption of conciliation within ten days, issued, addressed to Local 103 only, and on December 5, 1977 this lawsuit was commenced.

All parties agree that the International first acquired knowledge of the circumstances surrounding Goodman's charge and the EEOC efforts on Goodman's behalf only after the EEOC filed its complaint with this court. *See*, Affidavit of John E. Flynn, June 28, 1978, at ¶¶ 5–8. The International then requested a conference with the EEOC to discuss the allegations, a conference that the EEOC now characterizes as a post-complaint attempt at conciliation.

The EEOC asserts as against the International that Article XXVII, sections 1(1), 1(8) and 1(11) of the IBEW Constitution amount to a *per se* violation of Title VII. Article XXVII, § 1 reads in relevant part:

Sec. 1. Any member may be penalized for committing any one or more of the following offenses:

(1) Resorting to the courts for redress of any injustice which he may believe has been done him by the I.B.E.W. or any of its Local Unions without first making use (for at least a four-month period in the United States) of the process available to him under the I.B.E.W. Constitution including any appeal or appeals from any decision against him.

.    .    .    .    .

---

**3.** This list of violations is taken from the November 8, 1974 notice of charges mailed to Goodman from George Holland, Recording Secretary of Local 103. With the exception of the copies of Articles XVII and XXVII submitted with the briefs, none of the filings in this case contains a description of the rules and policies that Goodman allegedly violated.

(8) Sending letters or statements, anonymous or otherwise, or making oral statements, to public officials or others which contain untruths about, or which misrepresent a L.U., its officers or representatives, or officers or representatives of the I.B.E.W.

. . . . .

(11) Slandering or otherwise wronging a member of the I.B.E.W. by any wilful act or acts.

Section 1 further sets out the punishments as follows:

Any member convicted of any one or more of the above-named offenses may be assessed or suspended, or both, or expelled.

In case of conviction of violation of subsection (1) above, the member *may* be assessed an amount equal to the reasonable attorneys' fees and cost incurred by the I.B.E.W. or L.U. as a result of said violation in addition to, or in lieu of, any other penalty.

The EEOC focuses in particular on Section 1(1) which requires a four month exhaustion of internal union remedies before resort to the "courts". Reasoning that "courts" includes administrative agencies, the EEOC contends that this provision contravenes Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a) by discriminating against an individual for filing a charge with the EEOC or other relevant state or local agency before completion of the four month exhaustion period. Presumably, the EEOC also contends that the other two sections, 1(8) and 1(11), amount to a *per se*

violation because they expose a member to punishment for filing what turns out to be a groundless charge. The EEOC does not claim that the International had any relationship with the events surrounding Goodman's being charged and subsequently fined other than the maintenance of these challenged constitutional provisions.[4]

The International insists that it has always interpreted its constitution consistent with all legal requirements, including Title VII, and in particular that the word "courts" in Article XXVII, § 1 was never intended to include administrative agencies like MCAD. Supplemental Affidavit of Marcus L. Loftis, 11/10/78, at ¶¶ 6, 7. It specifically disavows any interest in the subject matter of this controversy and notes that any disciplinary action against Goodman based on Goodman's having filed a charge with MCAD would be contrary to the IBEW constitution and IBEW policy. Supplemental Affidavit of Marcus L. Loftis, *supra*, at ¶ 13. With this background in mind, we now turn to an analysis of the issues presented by this motion.

Section 706 of Title VII, 42 U.S.C. § 2000e–5, creates an administrative system for extra-judicial enforcement of Title VII's equal employment opportunity mandate. Because of its importance in the overall administrative enforcement scheme, compliance with certain of the procedures set forth in Section 706 has been treated by most courts as a jurisdictional condition precedent to commencement of a civil suit. Among the jurisdictional requirements of an EEOC-initiated enforcement action[5]

---

4. During oral argument, the EEOC suggested another connection between the International and Local 103's alleged retaliation against Goodman. The EEOC would have us infer ratification from the International's failure to discipline Local 103 for its actions. The response of counsel for the International adequately answers this contention. Because the charges against Goodman included violations of provisions other than the sections of the IBEW Constitution at issue in this case, it is quite possible that the disciplining of Goodman was not prompted by a retaliatory motive and that violations of other agreements standing alone constitute a sufficient basis for the discipline met-

ed out. We will not infer ratification from inaction where it is unclear whether a duty to act exists. See generally, Restatement (Second) Agency, § 94 (1958).

5. Before the 1972 Amendments to the Act the EEOC enjoyed no enforcement power of its own; only individuals could sue under Title VII. The jurisdictional prerequisites to an action brought by a private plaintiff are quite different. The individual need only have named the defendant as a respondent in his EEOC charge, a requirement that has been relaxed to a considerable extent, *see Evans v. Sheraton Park Hotel*, D.C. Cir. 1974, 164 U.S. App.D.C. 86, 503 F.2d 177; *Taylor v. Armco*

are: (1) the naming of the defendant as a respondent in the original charge filed with the EEOC, *e. g., Equal Emp. Op. Com'n v. MacMillan Bloedel Containers, Inc.,* 6 Cir. 1974, 503 F.2d 1086, 1095; *see,* 42 U.S.C. § 2000e–5(f)(1); (2) inclusion of the defendant and the possibly discriminatory acts for which it is responsible in the reasonable cause determination, *e. g., E.E.O.C. v. Sherwood Medical Industries,* M.D.Fla.1978, 452 F.Supp. 678, 681–82; *see,* 42 U.S.C. §§ 2000–5(b), 2000e–5(f)(1); and (3) efforts at informal settlement and conciliation prior to formal court action, *e. g., Equal Employment Opportunity v. Allegheny Airlines,* W.D.Pa.1977, 436 F.Supp. 1300, 1306, *see,* 42 U.S.C. § 2000e–5(f)(1). Of these three requirements, the most important is the attempt to conciliate, since securing voluntary compliance is the central purpose of the administrative apparatus created by Title VII. *Bowe v. Colgate-Palmolive Co.,* 7 Cir. 1969, 416 F.2d 711, 719. The requirement of a complete and clear reasonable cause determination also takes on jurisdictional significance primarily because of its importance as a basis for subsequent conciliation: it summarizes the EEOC investigation, provides notice to the respondent of the discriminatory acts requiring correction and sets forth the framework for negotiation. *See, Sherwood Medical Industries, supra,* at 681.

The International argues that none of these three jurisdictional requirements have been satisfied insofar as the EEOC claims against the International are concerned. The plaintiff offers three responses. First, although it admits that it never had any dealings with the International before this lawsuit commenced, the EEOC contends nevertheless that it has substantially met at least the most important prerequisites, the complete reasonable cause determination

and efforts to conciliate.[6] Second, the agency insists that this case falls within one of the judicially-carved "exceptions" to the jurisdictional requirements, excusing any failure on its part to comply. Finally, the EEOC argues that even if compliance is lacking and no exception is available, the International is a proper party under Fed.R. Civ.P., Rules 19, 20 or 21. We disagree, and the following analysis treats each argument in turn.

According to plaintiff's first point, the reasonable cause determination, construed broadly, contains reference to the illegality of Article XXVII, §§ 1(1), 1(8) and 1(11) of the IBEW constitution. The EEOC reasons that since Goodman was fined in part because he violated these provisions, any reference to the illegality of the fine in the reasonable cause determination necessarily also questions the legality of the sections of the Constitution themselves, by implication. The Letter of Determination, however, nowhere mentions the possible *per se* illegality of Article XXVII, §§ 1(1), (8) or (11); it summarizes the facts relating only to Local 103's treatment of Goodman. The retaliation alleged by the EEOC consists of a reprisal against Goodman primarily for having filed a charge with the EEOC, not for failing to comply with his duties under the Constitution. Furthermore because Goodman was fined for violating rules other than Article XXVII, e. g., governing lay-off procedures, reference to the fine alone cannot serve as notice that provisions of the union Constitution in particular are being challenged. The logical connection between the imposition of the fine and the illegality of Article XXVII, § 1, is too strained for mention of the former to serve as notice to the International of the latter. The finding must be clear and explicit. *Sherwood Medical Industries, supra,* at 681–82.

---

*Steel Corporation,* S.D.Tex.1973, 373 F.Supp. 885, and have complied with the time limitations set forth in 42 U.S.C. § 2000e–5. The absence of relevant findings in the reasonable cause determination and the lack of any effort by the EEOC to conciliate are not fatal to a private plaintiff's Title VII action. *EEOC v. Sherwood Medical Industries,* M.D.Fla.1978, 452 F.Supp. 678, 681–82.

**6.** If we were to accept this argument, the EEOC would presumably also have us excuse compliance with the first jurisdictional prerequisite, naming of the defendant in the original charge, by applying one of the theories discussed later in this opinion.

The EEOC also suggests that its meeting and correspondence with counsel for the International following commencement of this lawsuit satisfies its statutory obligation to attempt conciliation. *See,* Affidavit of Lanier Williams, Aug. 31, 1978, at ¶¶ 4–7. We do not accept this suggestion. Although courts are without authority to inquire into the degree of conciliation actually undertaken, *see, Sherwood Medical Industries, supra,* at 684, they may determine whether something properly characterizable as genuine "conciliation" within the meaning of 42 U.S.C. § 2000e–5(b) has taken place. *See, Allegheny Airlines, supra,* at 1305–06. The Act outlines an orderly series of procedures for processing a charge: the filing of the charge, its investigation, the issuance of a reasonable cause determination, attempts to conciliate, and only then, the commencement of a civil suit by the EEOC. *Equal Employment Opportunity Com'n v. Westvaco Corp.,* D.Md.1974, 372 F.Supp. 985, 987–89; *see, Developments-Title VII,* 84 Harv.L.Rev. 1109, 1195–99 (1971). If we were to permit efforts to settle a civil enforcement proceeding to replace the statutory extra-judicial conciliation requirement, the administrative enforcement scheme would be seriously frustrated. *Cf., Westvaco Corp., supra,* at 991–94. The psychological factor of the imminent commencement of a lawsuit would be lost, as would the opportunity for more relaxed discussion free from consideration of an existing judicial proceeding. Also relevant is the additional burden on courts which would result from allowing this exception, a burden that the Act sought to avoid through administrative enforcement. *See, Jackson v. University of Pittsburgh,* W.D.Pa.1975, 405 F.Supp. 607, 615; *see generally, Developments-Title VII,* 84 Harv.L. Rev. 1109, 1199–1202 (1971).

The EEOC's second response to the International's motion would have us apply one of the judicially-created "exceptions" to Title VII jurisdictional requirements. In particular, the plaintiff argues that both because Local 103 acted as the International's agent in discriminating against Goodman and because Local 103 and the International engaged in a common discriminatory enterprise, the interests of the two unions overlap to such an extent that the International was adequately represented by Local 103 during the administrative phase. The typical situation for application of the agency and common enterprise exceptions involves two defendants (here, Local 103 and the International) with respect to only one of whom (here, Local 103) all statutory requirements have been satisfied. The exceptions are invoked in order to excuse non-compliance with respect to the other defendant (here, the International).

To support its claim of an agency relationship between the International and Local 103, the EEOC cites us to general provisions of the International's constitution as evidence of the extent to which the International controls Local 103's activities. These provisions, however, have limited reach. They merely establish the supremacy of the International Constitution and policies over local bylaws, amendments and rules (Article XVII, §§ 7, 8, 9), require the International's prior approval before a local bylaw, rule or regulation takes effect (Article XVII, § 7), and confer power on the International Executive Committee to discipline local unions and members (Article IX, § 4). They do not vest the International with such a degree of control over Local 103 that Local 103 can be deemed to have acted as the International's agent when it allegedly retaliated against Goodman. *Cf., United Mine Workers v. Coronado Coal Company,* 1922, 259 U.S. 344, 395–96, 42 S.Ct. 570, 66 L.Ed. 975. Each local union keeps its own books and records and maintains an independent bank account funded by dues assessments. Officers and executive board members of a local union are elected by local union members and represent their local union only, and local unions are primarily responsible for the recruitment, referral and representation of employees in matters dealing with employment and for the disciplining of members for violating union rules and policies. Affidavit of Marcus L. Loftis, 7/3/78, at ¶¶ 5–10.

Furthermore, the International knew nothing about the disciplinary proceedings against Goodman or about Local 103's interpretation of Article XXVII, § 1, until after commencement of this lawsuit. These facts are sufficient to distinguish plaintiff's principal authority, *Taylor v. Armco Steel Corp.*, S.D.Tex.1973, 373 F.Supp. 885. In *Taylor*, the court emphasized that the international union knew about the discriminatory features of the local collective bargaining agreement and failed adequately to police it. 373 F.Supp., at 911. Under these circumstances, the court concluded that the local was acting as the agent of the international union in promoting its interests. The international union's indirect involvement was sufficiently large to charge it with responsibility for the local's activities, and since the interests of the two were substantially similar, the court concluded that the local adequately represented the international union before the Commission, 373 F.Supp., at 911. By contrast, Local 103 in the instant case operated independently of the International in disciplining Goodman.

Plaintiff's second ground for claiming adequacy of representation—the existence of a common discriminatory enterprise—fails for similar reasons. There is no evidence of a common scheme involving both the International and Local 103. The EEOC argues that by requiring a four-month exhaustion of internal union remedies and by requiring local unions to enforce this provision against disobedient union members, the International is engaged in a common enterprise with local unions, like Local 103, which discipline members for filing charges with administrative agencies. The International, however, maintains that it has always enforced Article XXVII in a manner consistent with all legal requirements and that in this case it never knew about Local 103's interpretation of Article XXVII or the discipline of Goodman allegedly for having filed a charge before the EEOC. Hence there is not the kind of identity of interest and the degree of participation by the International in the allegedly discriminatory activities of Local 103 to establish a common enterprise.

The instant case differs significantly from *Cook v. Mountain States T & T Co.*, D.Ariz.1975, 397 F.Supp. 1217, and *Byron v. University of Florida*, N.D.Fla.1975, 403 F.Supp. 49, upon which plaintiff relies. In *Cook*, the court held that under the liberal federal pleading rules the complaint set forth facts sufficient to establish a common enterprise of discrimination in that it alleged in part that both the national union and the local cooperated with the company to implement a policy of sex discrimination in employment and that the two unions refused to negotiate collective bargaining agreements which would correct these discriminatory practices. 397 F.Supp., at 1224–25. Moreover, the evidence in *Cook* revealed that the national union, although not named in the EEOC charge, received notice of all EEOC proceedings and was actively involved in negotiations. 397 F.Supp., at 1225.

The plaintiff in *Byron* sued the University of Florida and various of its officers and employees alleging a concerted effort to discriminate against her on account of her sex. One of the defendants not named in plaintiff's charge to the EEOC moved to dismiss as to him for lack of personal jurisdiction. Limiting itself to material in the complaint, the court held that since the complaint alleged concerted action, the unnamed defendant was adequately represented before the EEOC by the others. 403 F.Supp., at 53–54. The court reasoned that those present at EEOC settlement negotiations would have pressed all defenses to the charges that the unnamed defendant might have proffered. The instant case is quite different. Local 103 had a strong interest in not presenting a defense available to the International, namely, that Article XXVII § 1 had been interpreted by the International so as not to require exhaustion prior to petitioning an administrative agency. The extent of cooperation between the International and Local 103 does not approach that among employees and officers of the same institution, like the defendants in *Byron*, who implement uniform institutional policies and programs.

The classification of exceptions into so-called "agency" and "common enterprise" categories often conceals the underlying rationale for excusing noncompliance. Each of the cases making an exception to Title VII jurisdictional requirements turns on the presence of one of two factors: either the unnamed party had notice—actual or constructive—of the settlement negotiations and thus had an opportunity to participate, or the named and unnamed parties shared such an identity of interest that the named party could be said to have adequately represented the unnamed party. The existence of an agency relationship or a common enterprise is significant only insofar as it indicates notice or adequacy of representation. In the instant case, not only is there no agency relationship or common enterprise, but there is also neither notice nor adequacy of representation.

The International had no reason to know and was in fact unaware of the charge and conciliation efforts until after the commencement of this lawsuit. Furthermore, the evidence indicates that Local 103 could not have adequately represented the International. The interests of the two unions diverge substantially. Whereas Local 103, which is directly involved in Goodman's charge and which acted autonomously in disciplining Goodman and in adopting its own interpretation of Article XXVII, § 1, may have made the strategic decision to deny all forms of retaliation, the International might have been agreeable to some modifications of Article XXVII, since it was not otherwise implicated in the retaliation alleged by the EEOC. Moreover, the EEOC seeks in part to remove the offending sections from the IBEW Constitution. Because Local 103 alone is incapable of providing this relief, any conciliation efforts directed to this issue would have been fruitless without the participation of the International. Hence, we cannot say that there is such a substantial identity of interest between the International and Local 103 to excuse noncompliance with jurisdictional requirements in this case. *See, Butler v. Local 4 and Local 269, Laborers*, N.D.Ill. 1969, 308 F.Supp. 528.

*Glus v. G. C. Murphy Co.*, 3 Cir. 1977, 562 F.2d 880, cited by the plaintiff, does not compel a different result. In *Glus*, the court combined the factors underlying the established exceptions into a four part test for determining whether to excuse a failure by an individual plaintiff to name a defendant in his EEOC charge: (1) whether the complainant could through reasonable effort have ascertained the role of the unnamed party at the time of filing his EEOC charge; (2) whether the interests of a named party are so similar to those of the unnamed party that it would be unnecessary to include the unnamed party in EEOC proceedings; (3) whether the interests of the unnamed party were actually prejudiced by his absence from the EEOC proceedings; and (4) whether the unnamed party represented to the complainant that it would act through a named party. 562 F.2d, at 888. First, unlike *Glus*, the plaintiff in the instant case is the EEOC, not a private individual. The EEOC has the benefit of an extensive investigation before it formulates its reasonable cause determination. A careful reading of the sections of the IBEW Constitution which Goodman allegedly violated would have been sufficient to disclose the International's indirect involvement. Second, as discussed *ante*, the interests of the International are substantially different from those of the Local. Third, the International was certainly prejudiced by losing the opportunity to negotiate with the EEOC prior to commencement of this lawsuit. And, finally, the International made no representations to the EEOC that Local 103 could act as its agent during the administrative phase.

As its final position, the EEOC argues that even if it has not complied with the statutory requirements and even if a judicial exception is not warranted, nevertheless the International is a proper party under Rules 19, 20 and 21 of the Federal Rules of Civil Procedure. The EEOC reasons that assuming the court holds Article XXVII, §§ 1(1), 1(8) and 1(11) to be *per se* violations of Section 704(a) of Title VII insofar as they are enforced against Title VII claim-

ants, *cf., Rios v. Reynolds Metals Company,* 5 Cir. 1972, 467 F.2d 54, 57; *Rodgers v. Berger,* D.Mass.1977, 438 F.Supp. 713, 717, it is plain that the International would be an indispensable party under Fed.R.Civ.P., Rule 19, if the EEOC were to be awarded the complete relief it requests, including removal of the offending constitutional provisions. The EEOC concludes that we should join the International rather than confine the scope of the lawsuit by dismissing those claims for relief with respect to which the International is an indispensable party. It is our opinion that the circumstances of this case do not justify recourse to the Federal Rules of Civil Procedure to bootstrap the International into the lawsuit.

The policy favoring conciliation and settlement in the Title VII context is very strong. *Cf. Great American Fed. S. & L. Assn. v. Novotny,* —— U.S. ——, 99 S.Ct. 2345, 60 L.Ed.2d 957. A liberal application of Rules 19, 20 or 21 to allow the EEOC to sue parties which it has not included in a reasonable cause determination and with which it has not conciliated would emasculate the Title VII administrative enforcement system. If failure to comply with statutory procedures might be excused whenever necessary to make possible a broad and far-reaching remedy, courts could easily be transformed into the primary agency for Title VII enforcement, a result at odds with the statutory scheme.

Unlike many of the cases cited by the plaintiff, there is no special unfairness in strictly enforcing the statutory policy when the EEOC sues. A layman is often unaware of the relationship between a remote third party and the circumstances surrounding his charge at the time he files his complaint with the EEOC. In these circumstances, courts have been especially sensitive to the injustice of dismissing the complainant's lawsuit just because he failed to name in his charge a third party who turns out to be indispensible under Rule 19, even though the EEOC may have uncovered the role of the third party during its investigation and even though the third party may have had an opportunity to participate in the EEOC conciliation phase. To avoid this

unfortunate result, some courts have permitted joinder of the third party. *E. g., Evans v. Sheraton Park Hotel,* D.C. Cir. 1974, 164 U.S.App.D.C. 86, 503 F.2d 177, 183; *Grogg v. General Motors Corp.,* S.D.N. Y.1976, 72 F.R.D. 523, 533.

Unfairness of this sort is not present in the instant case. The EEOC, unlike the charging party, is eminently knowledgeable about the nuances of Title VII. The EEOC also has the benefit of a detailed investigation before writing its reasonable cause determination and commencing negotiations. It would not have been difficult in this case for the EEOC to have included the claims against the International in its reasonable cause determination. An extensive investigation was not necessary to expose the involvement of the International; the constitutional provisions are clear on the face of the document. At least in the absence of evidence that the unincluded party had notice of the negotiations or was adequately represented by those present, we are not inclined to excuse the agency to which Congress delegated the investigation and conciliation task by permitting the EEOC to assert claims against the unincluded third party and then to invoke the Federal Rules of Civil Procedure to join the third party in spite of the jurisdictional defects. *See, Glus v. G. C. Murphy,* 3 Cir. 1977, 562 F.2d 880, 886–87; *Sanchez v. Standard Brands, Inc.,* 5 Cir. 1970, 431 F.2d 455, 466–67; *E.E. O.C. v. Sherwood Medical Industries,* M.D. Fla.1978, 452 F.Supp. 678, 682–84; *N.O.W., Inc. v. Minn. Min. & Mfg. Co.,* D.Minn.1977, 73 F.R.D. 467, 470–72; *cf. Equal Emp. Op. Com'n v. MacMillan Bloedel Containers, Inc.,* 6 Cir. 1974, 503 F.2d 1086, 1095.

Some of the cases that plaintiff cites have allowed joinder for only a very limited purpose, for example, to aid in interpreting a collective bargaining agreement or to avoid subjecting another party to a risk of inconsistent obligations, at the same time as refusing to hold the defendant who did not participate before the EEOC directly liable on any claims. *See, e. g., E.E.O.C. v. McClean Trucking Co.,* 6 Cir. 1975, 525 F.2d 1007, 1011–12; *E.E.O.C. v. Brotherhood of*

*Painters, Etc.,* D.S.D.1974, 384 F.Supp. 1264, 1268; *Held v. Missouri Pacific Railroad Company,* S.D.Tex.1974, 373 F.Supp. 996, 999–1000. However, on the facts of this case joinder of the International is neither necessary nor desirable.

The EEOC's and Goodman's claims for damages and for injunctive relief against Local 103 remain after dismissal of the EEOC's claims against the International.[7] These can be adjudicated in the absence of the International. Any injunctive relief would take the form of an order restraining Local 103 from retaliating and in particular from enforcing Article XXVII, Sections 1(1), (8) and (11) against Title VII claimants. Issuing and enforcing such an order does not require the International's presence, and thus joinder under Rule 19(a)(1) is not necessary. Furthermore, the International has disclaimed any interest in this proceeding, insisting that it has in the past and intends in the future to interpret the provisions of its Constitution consistent with all requirements of law, including Title VII, and insisting that it has no intention of enforcing Article XXVII, Section 1, in a manner so as to frustrate the right of union members to file charges with the EEOC. Supplemental Affidavit of Marcus L. Loftis, *supra,* at ¶¶ 6, 7, 13. This disclaimer of interest renders inappropriate any joinder under Rule 19(a)(2)(i). *See, EEOC v. General Motors Corp.,* N.D.Ohio 1973, 7 EPD (CCH) ¶ 9414. The disclaimer also mitigates the risk that Local 103 might be disciplined by the International for failing to prosecute charges against union members based on violations of Article XXVII, § 1, stemming from the exercise of Title VII rights. The risk that Local 103 will incur inconsistent obligations is too slight to require joinder under Rule 19(a)(2)(ii). *See, Virginia Electric and Power Co. v. Bunker Romo Corp.,* E.D.Va.1973,

61 F.R.D. 366, 368–69; *Soar v. National Football League Players' Association,* D.R.I. 1975, 65 F.R.D. 531, 538. *But see, Hodgson v. School Board,* W.D.Pa.1972, 56 F.R.D. 393, 395. And in these circumstances we are not disposed to grant a motion brought by the EEOC when Local 103, the party on whom the supposed risk will fall, has not chosen to make a similar motion. *General Motors Corp., supra,* at 7830. For these same reasons, we do not permit joinder under Rule 20 or Rule 21.

*Curran v. Portland Super. Sch. Committee, Etc.,* D.Me.1977, 435 F.Supp. 1063, is distinguishable. Noting that the City of Portland was an indispensable party to the litigation if complete relief was to be provided, the court refused to dismiss a Title VII count against the City even though the plaintiff had failed to name it in his EEOC charge. *Id.,* at 1074–75. The court also noted that the City had been charged in plaintiff's notice of discrimination filed with the Maine Human Rights Commission and thus had actual notice of plaintiff's attempts to achieve an administrative settlement. *Id.,* at 1074. The International received no comparable notice in this case. Moreover, *Curran* involved a private plaintiff who easily could have overlooked the need for involving the City in any remedial scheme that might later be developed. As discussed *ante,* the position of the EEOC plaintiff in this case is quite different. Indeed, the *Curran* court, in dismissing the Title VII count as against some of the individual defendants, stated the rule which we believe controls the instant case:

> While liberality in construction should be favored, minimum standards of statutory compliance are essential to avoid bypassing the Commission and the statutory emphasis on voluntary compliance and conciliation.

7. In fact it appears that Goodman might be able to secure most of his individual relief in an action for violation of Section 101(a)(4) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(4), which governs the validity of exhaustion requirements like Article XXVII, Section 1(1). It is true that the failure to exhaust is only one of the violations for

which Goodman was fined and that the union might be able to show that some other charge supports the discipline meted out. There is, however, authority for the proposition that the discipline itself is void whenever one of several supporting grounds is invalid. *Ford v. Kammerer,* E.D.Pa.1968, 287 F.Supp. 853, 857.

*Id.,* at 1074, *quoting, Scott v. University of Delaware,* D.Del.1974, 385 F.Supp. 937, 941. *Accord, Puntolillo v. New Hampshire Racing Commission,* D.N.H.1975, 390 F.Supp. 231, 236.

In the circumstances of this case holding the EEOC to "minimum standards of statutory compliance" requires us to grant the International's motion for summary judgment and to dismiss the EEOC's claims against the International. So ordered.